The STATE of Wyoming and the Department of Revenue and Taxation of the State of Wyoming, and the Tax Commission and State Board of Equalization of the State of Wyoming, Appellants (Defendants below),

v.

SINCLAIR PIPELINE COMPANY, formerly known as Pasco Pipeline Company, Appellee (Plaintiff below).

No. 5182.

Supreme Court of Wyoming.

Jan. 25, 1980.

John D. Troughton, Atty. Gen., and Kenneth G. Vines, Asst. Atty. Gen., Cheyenne, for appellants.

Paul B. Godfrey of Godfrey & Sundahl, Cheyenne, and Charles A. Ramunno and Thomas C. Folsom, of Holme, Roberts & Owen, Denver, Colo., for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

ROSE, Justice.

On October 18, 1976, appellee, Sinclair Pipeline Company, claimed a refund for use taxes paid to the State of Wyoming during January through July, 1974, on certain pipe used in one of its pipelines in Wyoming. The Wyoming Tax Commission denied the claim and, on February 10, 1977, the Pipeline Company filed a complaint in the District Court of Laramie County in which it sought recovery of the use tax.

On July 9, 1979, the district court entered judgment for Sinclair in the sum of $50,-257.12, this figure representing the amount of tax that the district court found to have been illegally paid.

The facts have been stipulated by the parties and are, in summary, as follows:

During the months of January through July, 1974, Sinclair Pipeline Company purchased pipe from a supply house in Tulsa, Oklahoma, for use in the Wyoming segment of its pipeline. The pipe was delivered F.O.B. Regina, Saskatchewan, Canada. Sinclair then engaged the services of a common carrier to transport the pipe from Canada to Fort Collins, Colorado, where it was delivered to a company to be covered with a protective external coating as required by Federal regulations. The pipe remained in Colorado for purposes of this processing for periods ranging from 6 to 30 days and was then shipped by common carrier to Wyoming where it was installed in the system as a part of an interstate oil and gas pipeline.

According to the requirements of Wyoming law, Sinclair filed use-tax returns for the months of January through July, 1974, and, with the filing of the returns, paid use tax on the purchase price of the pipe. On May 5, 1976, the State of Colorado issued a notice of deficiency to Sinclair, assessing

---

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to Article 5, Section 5, Wyoming Constitution, and Section 5–1–106(f), W.S.1977, by order of this court entered January 1, 1979.

use taxes, together with penalties and interest for the period during which the same pipe was being processed in Colorado.

In holding as it did, the district court seemed to say that the Pipeline Company was entitled to recover from the State of Wyoming the amount of tax paid here since the right to tax the property first arose in Colorado and, therefore, Colorado enjoyed a taxing priority over Wyoming.

When this action arose, Wyoming and Colorado were members of the Multistate Tax Compact. Both states were governed by the provisions of Article V of the compact, § 39–376, W.S.1957, 1975 Cum.Supp., and the Colorado Revised Statutes, § 24–60–1301 (1973). This article, in part, provided:

> "1. Each purchaser liable for a use tax on tangible personal property shall be entitled to full credit for the combined amount or amounts of legally imposed sales or use taxes *paid* by him with respect to the same property in another State . . . ." (Emphasis supplied)

■ The appellant, State of Wyoming, urges this following argument upon the court: Wyoming says that the district court was in error when it held that this state was, under Article V of the Interstate Tax Compact, supra, required to give Colorado a credit on a tax which was assessed in that state subsequent to the time when Wyoming had assessed and been paid its tax. Wyoming argues that the statute says that the state which *first collects* its tax is entitled to it without reference to where the right to the tax first arose.

The appellee, Sinclair, supports the district court holding, which is that Article V, supra, must be read to mean that a state which *first has jurisdiction* to impose its use tax on personal property (i. e., where the right to tax first arose) is entitled to that tax regardless of the fact that another state has collected its use tax on the same property.

We agree with Wyoming's position and will reverse.

The statute says that a taxpayer who has "*paid*" his tax to one state will receive a credit upon any tax which may be due another state on that same property. In the instant matter, Sinclair had *paid*, the Wyoming tax before Colorado ever assessed the taxpayer. If Sinclair owed the State of Colorado a tax, it was a sum less the amount it had *paid* Wyoming. That is what the statute says.

■ The statute is not ambiguous and, when a statute is clear as to its meaning, we may not resort to rules of construction. *State ex rel. Director, Worker's Compensation Division v. Wyo-Dak*, Wyo., 589 P.2d 835 (1979); and *Geraud v. Schrader*, Wyo., 531 P.2d 872 (1975). In *Sanchez v. State*, Wyo., 567 P.2d 270, 274 (1977), we said:

> " ' . . . [W]here there is plain, unambiguous language used in a statute there is no room for construction, and a court may not properly look for and impose another meaning . . . .' "

This is the rule according to which this court undertakes to reflect upon the meaning of a statute.

The appellee agrees (in its brief) that the statute is clear and unambiguous but then goes on to urge that the word "paid" does not mean *first paid* but that it means *whenever paid*. The argument is then made that since Colorado's tax was "paid," albeit after Wyoming's tax was "paid," Sinclair, the taxpayer, is therefore entitled to a credit in the form of a refund from Wyoming because it was bound to pay the full Colorado tax since it was there that the "first taxable incident" occurred.

The statute says nothing about the "first taxable incident" and—while Sinclair argues that the statute is clear and unambiguous on its face and therefore we need not look further to ascertain its meaning—Sinclair *in fact* finds it necessary to look past the plain words of the statute to a rule of use-tax law in order to reach the conclusion it urges.

We need not look to any general rules of use taxation to read this statute. Paid means paid. Nothing could be more clear. It is the past tense of pay. It means that

payment has occurred. Under Article V, supra, when a proper use-tax payment has occurred in one state, another taxing entity seeking to impose a use tax on the same property must give credit to the taxpayer for the first-paid tax. That is what the statute says and we are not allowed to give it another meaning.

Sinclair also argues that if we reverse the district court, it will be placed in the position of having been forced to pay a full Wyoming and a full Colorado tax on the same property, in violation of the commerce clause of the federal constitution.

Let us assume, arguendo, that the commerce clause would not permit both Wyoming and Colorado to exact full use taxes from Sinclair. The Multistate Tax Compact was designed to avoid the multiple taxation complained of and, in this case, once Sinclair paid Wyoming the tax, it was entitled to a deduction in that amount from any tax due Colorado. If Sinclair did not choose to assert this right and, instead, elected to pay Colorado's tax without deducting what it had previously paid Wyoming, that is not Wyoming's fault. We are cited to no authority which interprets the commerce clause to require a state to give a tax refund whenever the taxpayer makes a subsequent unnecessary tax payment to another state.

Reversed.

THOMAS, Justice, dissenting.

I dissent from the conclusion of the other members of the Court in this instance. The purposes of the Multistate Tax Compact are:

"ARTICLE I. PURPOSES

"The purposes of this compact are to:

"1. Facilitate proper determination of State and local tax liability of multistate taxpayers, including the equitable apportionment of tax bases and settlement of apportionment disputes.

"2. Promote uniformity or compatibility in significant components of tax systems.

"3. Facilitate taxpayer convenience and compliance in the filing of tax returns and in other phases of tax administration.

"4. Avoid duplicate taxation." Section 39–376, W.S.1957 (1975 Cum.Supp.).

Those purposes are best served with respect to the application of use taxes if the chronological attachment of the use taxes of the participating states to the property subject to taxation is observed and honored. The word "paid" so critical to the majority determination then would be a condition to the claiming of the credit, nothing more. Construing that provision to mean "first paid" results in a race to collection or payment among the participating states. Such a construction makes the application of the compact eccentric if not irrational. This result is the antithesis of the purposes for the compact.

Recognizing that the repeal of this provision in Wyoming makes this case of little precedential value in our state, it does seem that our decision may be turned to by other jurisdictions since we apparently are writing on a clean slate. I would urge other jurisdictions to consider carefully the purpose of the compact and the construction which most appropriately serves that purpose.