SHERIDAN NEWSPAPERS, INC., a
Wyoming Corporation,
Appellant (Plaintiff),

v.

CITY OF SHERIDAN, and Roger F.
Krout, Appellees (Defendants).

CITY OF SHERIDAN, and Roger F.
Krout, Appellants (Defendants),

v.

SHERIDAN NEWSPAPERS, INC., a
Wyoming Corporation,
Appellee (Plaintiff).

Nos. 5724, 5725.

Supreme Court of Wyoming.

March 11, 1983.

Lawrence A. Yonkee of Redle, Yonkee & Arney, Sheridan, for appellant in Case No. 5724 and appellee in Case No. 5725.

Duane C. Buchholz, Asst. City Atty., Sheridan, for appellees in Case No. 5724 and appellants in Case No. 5725.

Before ROONEY, C.J.,* and RAPER, THOMAS, ROSE ** and BROWN, JJ.

ROSE, Justice.

The appellant Sheridan Newspapers, Inc., publisher of the Sheridan Press newspaper, brought this action to gain access to certain categories of records maintained by the Sheridan police department. The trial judge entered an order from which Sheridan Newspapers, Inc. appeals in Case No. 5724, and from which the City of Sheridan appeals in Case No. 5725. We will reverse in 5724 and affirm in 5725.

Since July 31, 1981, the chief of police of Sheridan has denied the Sheridan Press and other news-disseminating agencies the right

* Became Chief Justice on January 1, 1983.

** Chief Justice at time of oral argument.

to inspect certain kinds of records maintained by the Sheridan police department, and particularly the "rolling log" and "case reports." In lieu of press inspection, members of the police department have held press conferences and furnished representatives of the press with news releases prepared by the detectives.[1] This method of news dissemination is unacceptable to the press.

In this appeal the newspaper contends that it has a statutory right[2] and constitutional rights[3] of routine access to the rolling log and police case reports. The appellant newspaper concedes that these rights are qualified by the discretion authority of the chief of police, as custodian of the controversial records, to deny disclosure of particular documents or information contained within given records or categories of records on a case-by-case or document-by-document basis when disclosure of such information would be in violation of the statute[4] and therefore contrary to the public inter-

1. This denial of access was outlined in a letter from the chief of police, custodian of police records, in the following form:
   "July 31, 1981
   "TO: All News Media Stations
   "FROM: Roger F. Krout, Chief of Police
   "The purpose of this letter is to advise all news media and their representatives of the policy which will be followed by the Sheridan Police Department in any future releases of information from department records, reports, and logs.
   "Effective immediately, all news releases from the Sheridan Police Department will be in the form of a written statement prepared by the Department and disseminated uniformly to all news media.
   "Once each week at a time to be fixed, a news conference will be held by the Police Department and conducted by a representative of the Detective's Office, the Assistant Chief, or the Chief of Police.
   "Effective immediately, no information concerning an ongoing investigator or a report of crime will be disseminated without the personal approval of the Chief of Police, or in his absence the Assistant Chief, the senior Detective, or the City Attorney.
   "All records of investigation transferred to the office of County Attorney and information contained therein, will be released only upon the specific approval of the County Attorney.
   "Following the arrest of any individual or individuals for the commission of a crime, information concerning those persons and the specific crime for which arrested will be made available to news media unless to do so would not serve a legitimate law enforcement function such as compromising a continuing investigation.
   "No media representative will be permitted individual access to reports, case files, or logs of cases in progress.
   "/s/ Roger F. Krout
   Chief of Police
   "RFK:11w
   "CC: Sheridan Press
   KWYO Radio
   KROE Radio

Billings Gazette
Casper Star Tribune
KSGW TV"

2. Under the Wyoming Public Records Act, § 9–9–101 through § 9–9–105, W.S.1977, enacted by Ch. 145, S.L. of Wyoming 1969, as amended. See nn. 4 and 5, infra.

3. Under Art. 1, § 20 freedom-of-speech-and-press, and Art. 1, § 6 due-process clauses of the Wyoming Constitution, and the First (freedom-of-speech-and-press) and Fourteenth (due-process) Amendments to the Federal Constitution. In *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed.2d 1117 (1931), Mr. Justice Hughes said that the First Amendment was applicable to the states by reason of the due-process clause of the Fourteenth Amendment to the Federal Constitution.

4. Public records are defined at § 9–9–101(a)(i), W.S.1977, 1982 Cum.Supp., as follows:
   "(i) 'Public records' when not otherwise specified shall include any paper, correspondence, form, book, photograph, photostat, film, microfilm, sound recording, map drawing, or other document, regardless of physical form or characteristics, and including all copies thereof, that have been made by the state of Wyoming and any * * * municipalities * * * or received by them in connection with the transaction of public business, except those privileged or confidential by law;"
   Section 9–9–102(a), W.S.1977 requires:
   "All public records shall be open for inspection by any person at reasonable times, except as provided in this act [§§ 9–9–101 to 9–9–105] or as otherwise provided by law, but the official custodian of any public records may make such rules and regulations with reference to the inspection of such records as shall be reasonably necessary for the protection of such records and the prevention of unnecessary interference with the regular discharge of the duties of the custodian or his office."

est.[5] The Wyoming Public Records Act provides that the custodian must, if requested by the applicant, furnish a statement containing grounds for denial of access,[6] and any person denied the right of access may apply to the district court for an order directing the custodian of the record to show cause why inspection should not be permitted.[7] In this case, the chief of police did not furnish any factual basis or reasons for closing the records when responding to the appellant newspaper's request for explanation for closure.

## ROLLING LOG

The rolling log, which is also referred to as the "daily log," is prepared by the police dispatchers and can be described as a chronological index of all reports and complaints received by the department; in other words, it is any information that callers report to the dispatcher over the telephone. The rolling log typically contains one line of information concerning each subject reported to the department. The dispatcher receiving a call records a case number, type of case, a brief description of the event, the name of the person reporting the matter and the name of the officer assigned to the case. These entries are not verified and are used by the department as an index.

In testifying about the rolling log, the chief of police acknowledged that this form of document contained no information obtained as a result of investigation.[8]

## CASE REPORT

The term "case report" speaks of information recorded on a form on which is entered data relating to various sorts of police activity. A case report may detail a matter from complaint, through investigation, to arrest. It may, on the other hand, record a situation in which police have checked out a tip from an anonymous caller to which no further attention is given, no culpable party discovered, no arrest made, and with no further communications from the initial complainant.[9]

It is conceded by the newspaper that the case reports may contain material obtained as a result of investigation. It is the press'

---

5. The Act makes provision for denying the right to inspect a public record or portions thereof and the sections of the statute which, for purposes of this appeal, address denial, are found in § 9–9–103, W.S.1977, 1982 Cum.Supp. where it is provided:

"(a) The custodian of any public records shall allow any person the right of inspection of such records or any portion thereof except on one (1) or more of the following grounds or as provided in subsection (b) or (d) of this section:

    \*    \*    \*    \*    \*    \*

"(iii) Such inspection is prohibited by rules promulgated by the supreme court, or by the order of any court of record.

"(b) The custodian may deny the right of inspection of the following records, unless otherwise provided by law, on the ground that disclosure to the applicant would be contrary to the public interest:

"(i) Records of investigations conducted by, or of intelligence information or security procedures of, any sheriff, county attorney, district attorney, city attorney, the attorney general, police department or any investigatory files compiled for any other law enforcement or prosecution purposes;

    \*    \*    \*    \*    \*    \*

"(v) Interagency or intraagency memorandums or letters which would not be available by law to a private party in litigation with the agency."

6. Section 9–9–103(e), W.S.1977 reads:

"If the custodian denies access to any public record, the applicant may request a written statement of the grounds for the denial, which statement shall cite the law or regulation under which access is denied, and it shall be furnished forthwith to the applicant."

7. Section 9–9–103(f), W.S.1977 reads:

"Any person denied the right to inspect any record covered by this act may apply to the district court of the district wherein the record is found for any order directing the custodian of such record to show cause why he should not permit the inspection of such record."

8. When the chief of police was being questioned, this exchange took place:

"Q. But, the record [rolling log] doesn't reflect any of the materials or information obtained as a result of an investigation.

"A. No, sir."

9. The description of the case report is substantially from the City of Sheridan's brief.

contention that even if this is so, the custodian has no resulting authority to invoke a blanket withdrawal of this class of record without exercising his discretion on a case-by-case or document-by-document basis within the parameters of his statutory limitations.

### TRIAL COURT'S HOLDING

The trial court found that the rolling log and case reports are public records. The court further decided that members of the public (which of course includes the press) [10] have a right to inspect "jail logs," traffic accident reports, and complaints and citations issued. The trial judge went on to hold, however, that the custodian of the police records may properly deny public access to the police rolling log and case reports and that plaintiff newspaper and the public do not have a constitutional or statutory right of access to inspect these categories of police records.

### CONTENTION OF THE PARTIES

█ Both parties have appealed. In Case No. 5724, Sheridan Newspapers, Inc. contends that blanket closure of the rolling-log and case-report categories of police records is unlawful in that appellant has a statutory and constitutional right to routinely inspect those records, subject to the police chief's right of withdrawal in instances where the inspection is prohibited by court rule or order (e.g., § 9–9–103(a)(iii), supra) —or where it can be shown that disclosure of the disputed record is investigatory in

character as contemplated by § 9–9–103(b)(i), supra,[11] and that disclosure would therefore be contrary to the public interest. The press goes on to contend that in this case the records custodian did not show any valid and legally acceptable reasons why the questioned categories of records should or could be withdrawn.

In Case No. 5725, the City of Sheridan appeals from the part of the judgment which, it alleges, restricts the closure authority of the chief of police. The aspects of the judgment to which it objects are those which it says engraft upon the Wyoming Public Records Act additional requirements which must be met by the record custodian before he may exercise his discretion to deny the plaintiff or the public the right to inspect these records. In the City's language, objections are made to these following alleged additional requirements which are contained in the judgment:

"(1) any exclusion must be on a 'case-by-case basis', and

"(2) 'such exclusion shall be only on a very limited basis', and

"(3) 'only upon extraordinary circumstances', and

"(4) 'for good cause shown', and

"(5) 'then only for such limited time as may be necessary.'" [12]

### ISSUES FOR DECISION IN CASE NO. 5724

Summarized, the main questions in this appeal where Sheridan Newspapers, Inc. is appellant may be said to be these:

---

**10.** We said in *Williams v. Stafford*, Wyo., 589 P.2d 322, 325 (1979):

"* * * Their [the press'] right to be present [at a bail-bond hearing] derives from their status as members of the public." Citing *Gannett Pacific Corporation v. Richardson*, 59 Haw. 224, 580 P.2d 49, 55 (1978).

The court said in *Houston Chronicle Publishing Company v. City of Houston*, Tex.Civ.App., 531 S.W.2d 177, 82 A.L.R.3d 1 (1975):

"However, it has often been said that the first amendment does not guarantee the press a constitutional right of special access to information not available to the public generally. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Saxbe v.*

*Washington Post Co.*, 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974)."

**11.** Appellee cites as authority for custodial withdrawal, subsection (v) of § 9–9–103(b), W.S.1977, but the City does not cite one single authority for the proposition that the rolling logs or case reports are interagency or intra-agency memorandums within the contemplation of the Act. We will therefore not consider the issue. This court will not consider appellate contentions that are supported with perfunctory argument and no authority. *Barnette v. Doyle*, Wyo., 622 P.2d 1349 (1982).

**12.** From the appellant City's brief in case No. 5725.

1. How is the Public Records Act to be construed with respect to police records?
2. What, if any, authority do the First and Fourteenth Amendments to the Federal Constitution and Article 1, Sections 20 and 6 of the Wyoming Constitution give the press to have access to the records of law enforcement agencies?

### The Law
### The Court's Historical Disclosure Position

In *Laramie River Conservation Council v. Dinger,* Wyo., 567 P.2d 731, 733 (1977), we compared Wyoming's Public Records Act with the Federal Freedom of Information Act and said:

"The policy and dominant object of the Freedom of Information Act is on disclosure, not secrecy."

We went on to say:

"* * * We hold that analysis to be applicable to Wyoming's Public Records Act."

■ This holding is but another pronouncement from this court having to do with making the public's business available to the public whenever that is possible. The courts, legislature, administrative agencies, and the state, county and municipal governments should be ever mindful that theirs is public business and the public has a right to know how its servants are conducting its business. Furthermore, it is for government to remember that the written, viewing and broadcasting press are the eyes and ears of the people. The citizenry must be permitted to hear and see what public officers and their employees say and do whenever the imparting of this knowledge does not run contrary to the rights of those otherwise protected in a way that would result in disclosure having the effect of inflicting such irreparable harm as is recognized at law.

It was in this vein that we addressed a court-closure issue in *Williams v. Stafford,* Wyo., 589 P.2d 322, 325 (1979), when we said:

"There is almost universal agreement among the courts, which have considered the right-of-access issue, that access to court proceedings should be limited only in exceptional circumstances. See *Gannett Pacific Corp. v. Richardson,* supra; *Philadelphia Newspapers, Inc. v. Jerome* [478 Pa. 484, 387 A.2d 425 (1978)], supra; and *Keene Publishing v. Keene District Court,* [117] N.H. [959], 380 A.2d 261 (1977). The reason for requiring all court proceedings to be open, except where extraordinary reasons for closure are present, is to enhance the public trust and confidence in the judicial process, and to insulate the process against attempts to use the courts as tools for persecution. *Gannett Pacific Corp. v. Richardson,* supra."

The justices of this court, in line with the concept of maximum disclosure, have recently opened the Wyoming Supreme Court to television coverage so that the people may better see and understand the judicial system.

In *Record-Times, Inc. v. Town of Wheatland,* Wyo., 650 P.2d 297 (1982), when addressing the meaning of a statute which speaks to the municipalities' obligation to publish the towns' bills, this court concerned itself with the subject of public disclosure of the people's business when we held that the intent of the legislature was—and the applicable statute required—that the town publish the individual salaries of its employees.[13] In the Record-Times opinion we said:

"* * * [U]nderlying the main issue in this case is the question of public access to public information. * * * [W]e are certain that the intent of the legislature

**13.** Section 15–1–110, W.S.1977 provides:
"The governing body of each city and town shall designate a legal newspaper and publish once the minutes of all its regular and special meetings and the titles of all ordinances passed. If no newspaper is published in the city or town the proceedings or ordinances need not be published. The clerk of each city

or town, within forty-eight (48) hours after adjournment of every meeting, shall furnish the newspaper a copy of the proceedings of the meeting. The copy shall include every bill presented to the governing body showing the amount of the bill, the amount allowed, the purpose of the bill and the claimant."

in enacting § 15–1–110 was to insure that the business of each municipality in Wyoming would be subject to public scrutiny with respect to the expenditure of funds for all acquired debts. *The legislature has on several occasions expressed the need for maintaining an open and accountable government. Examples of this intention are the enactment of the Public Records Act (§§ 9–9–101 to 9–9–105, W.S.1977, 1982 Cum.Supp.) and the open meetings statutes (§§ 9–11–101 to 9–11–107, W.S.1977).* We said in *Laramie River Conservation Council v. Dinger,* Wyo., 567 P.2d 731, 734 (1977):

"'* * * Confrontation has a salutary effect and causes those in positions of public responsibility to practice thoughtfulness and wisdom in their utterances and carefully weigh their decisions. Paraphrased from *Environmental Protection Agency v. Mink,* [410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)] supra, such disclosure acts are broadly conceived to permit access to information long shielded unnecessarily from public view and create judicially enforceable rights to secure information from possibly unwilling hands. The disclosure acts promote within the agencies affected a sensitiveness to the needs of the public and make democratic government function in a modern society. With some necessary exceptions, recognized by Wyoming's records and meetings acts, state agencies must act in a fishbowl. * * *'" (Emphasis and bracketed matter added.) 650 P.2d at 300–301.

In the *Record-Times, Inc.* opinion we went on to say:

"'* * * The reason for openness and accountability in all phases of government cannot be stated any better than it was in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980):

"'People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.' 448 U.S. at 572, 100 S.Ct. at 2825.'" 650 P.2d at 301.

### The Issues of This Case

We come then to the question which asks whether the trial court acted properly when it decided that the press has no statutory or constitutional right to routinely inspect the City of Sheridan's police rolling log and case reports.

Where the Wyoming Public Records Act statutes restrict (for purposes of the facts of this case) withdrawal to those circumstances where disclosure of investigatory documents would not be in the public interest under § 9–9–103(b)(i), it seems that the triggering of the custodian's withdrawal of the rolling log and case reports had little if anything to do with investigatory considerations. The record would suggest that the reason for withdrawal of the two questioned categories of police records from press inquiry found its origin in reaction to public and reporter irritation rather than investigatory concerns. Public criticism, together with the violation by the reporters of some of the police department's news-gathering rules, bothered the chief of police, and the result was his withdrawal of such police records as are at issue here. The chief gave the following as an example of news items with respect to which he has objection:

"Sharon Busby, 458 Park, had a shocking experience instead of an intended nap late Wednesday afternoon. She had been resting when she heard a noise outside her home. She ran to her front porch, and was greeted by a man who stood yelling obscenities at her while he relieved himself on her front steps. He zipped up and drove off with a male companion in a Sheridan pickup while Busby called the police. Neither of the men were found."

The city attorney disapproved of an item appearing in the Sheridan Press which was referred to in the evidence as the "Capillupo Story." It read:

"Connie Capillupo must not have been pleased when she returned to her home at 556 N. Gould Saturday afternoon. She

had left for a few hours, and returned to find someone had made himself at home, apparently fixing something to eat and napping on the couch before sleeping—and wetting—in her bed. The culprit left behind a pair of boots."

Chief of Police Krout was offended by stories appearing in the press concerning a Mr. Showers and a Mr. Washut. The Showers item read as follows:

"Paul J. Showers, Jr., was jailed late Sunday night on disorderly conduct and open container charges. Reportedly, Showers fell asleep in the Centennial Theater, 36 E. Alger, during a movie, and could not be roused until police were called. A half-full bottle of beer was reportedly found in the seat with Showers."

The chief objected to the Washut story because the Sheridan Press reporter had authored a story from the jail log which contained information that had not been disclosed through the news release prepared by the department detectives. The department news release read as follows:

"A vehicle driven by Stephen Washut, Sheridan, struck a parked vehicle belonging to Richard Loeber in the 1600 block of DeSmet at 11:08 p.m. on Saturday. One citation issued."

The incident was reported in the Sheridan Press as follows:

"Stephen T. Washut was arrested for driving while under the influence of intoxicating beverages at 11:23 Saturday night after Washut reportedly struck a parked vehicle belonging to Richard Loeber in the 1600 block of DeSmet."

The Washut incident provided the incentive for the chief's denial of access to the jail log, even though he was forced to admit that the news report was accurate. However, he closed the jail log because the news report was at variance with the prepared news release. His further reason for invoking his closure policy was that he wanted to protect the privacy of individuals who are arrested by the police department. He pointed out as an example of his concern the fact that Mr. Washut was never convicted of the charge of driving while under the influence.

These news stories and an incident involving another reporter provided the impetus for blanket closure of the Sheridan police records. Krout explained:

"One reporter was caught several times in the detectives office when no one was present or after closing hours and was reading cases."

He went on to say that one of the reasons for closing all records was to prevent the offending reporter from breaking the rules and procedures of the department.

### Statutory Construction

In interpreting statutes relating to public access to public records generally—including police records—the applicable rule is that these statutes should be construed liberally. It is said in Annot., 82 A.L.R.3d 19, 42, Validity, Construction, and Application of Statutory Provisions Relating to Public Access to Police Records:

"Referring to a statute providing that public records should be open for inspection at all reasonable times, it was held that doubt should be resolved in favor of disclosure of records held by governmental units, in *Dayton Newspapers, Inc. v. Dayton* (1976) 45 Ohio St 2d 107, 74 Ohio Ops 2d 209, 341 NE2d 576. The court said that, aside from the exceptions to disclosure mentioned in the statute, records should be available to the public *unless* [emphasis in text] *the custodian of such records can show a legal prohibition to disclosure.* [Emphasis added.]"

As noted above, in assigning the same legislative intent to the Wyoming Public Records Act as is found characteristic of the Federal Freedom of Information Act, we said in *Laramie River Conservation Council v. Dinger,* supra:

"The policy and dominant object of the Freedom of Information Act is on disclosure, not secrecy. *Exemptions, therefore, are to be construed narrowly. Department of Air Force v. Rose,* 1976, 425 U.S. 352, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11; *National Labor Relations Board v. Sears,*

*Roebuck & Co.,* 1975, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29; *Renegotiation Board v. Grumman Aircraft Engineering Corporation,* 1975, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57; and *Environmental Protection Agency v. Mink,* 1973, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119. We hold that analysis to be applicable to Wyoming's Public Records Act." (Emphasis added.) 567 P.2d at 733.

In this appeal, the Wyoming Public Records Act will, in accord with our holding in the Laramie River Conservation Council case, receive a liberal construction in favor of disclosure and against withholding, and "exemptions" will be "construed narrowly." Additionally, we recognize the appropriate rule of law to be that police records should be available to the public except in those instances where the custodian "can show a legal prohibition to disclosure," *Dayton Newspapers, Inc. v. Dayton,* 45 Ohio St.2d 107, 74 Op.2d 209, 341 N.E.2d 576 (1976), and see § 9–9–103(a)(iii) and (b)(i), supra n. 5.

### *Constitutional Rights*

■ The Sheridan Press has a constitutional right to the disputed material under the applicable freedom-of-the-press and due-process provisions of the federal and state constitutions. (See n. 3, supra.) This right is qualified by the Wyoming statutes which provide that the records, or portions thereof, may be withdrawn when the statute or a court directs withdrawal or where the disputed materials are investigatory as described by statute *and* the custodian finds withdrawal to be in the public interest. (See nn. 4 and 5, supra.)

In *Branzburg v. Hayes,* 408 U.S. 665, 721, 92 S.Ct. 2646, 2692, 33 L.Ed.2d 626 (1972), the Supreme Court said:

"The press has a preferred position in our constitutional scheme, not to enable it to make money, not to set newsmen apart as a favored class, but to bring fulfillment to the public's right to know. The right to know is crucial to the governing powers of the people * * *."

In *Procunier v. Martinez,* 416 U.S. 396, 429, 94 S.Ct. 1800, 1819, 40 L.Ed.2d 224 (1974), Justice Douglas concurring said:

"Free speech and press, within the meaning of the First Amendment, are, in my judgment, among the pre-eminent privileges and immunities of all citizens."

In *Pell v. Procunier,* 417 U.S. 817, 833, 94 S.Ct. 2800, 2809, 41 L.Ed.2d 495 (1974), the Supreme Court acknowledged

" * * * that 'news gathering is not without its First Amendment protections,' * * * for 'without some protection for seeking out the news, freedom of the press could be eviscerated,' * * *." (Quoting from *Branzburg v. Hayes,* supra, 408 U.S. at 707 and 681, 92 S.Ct. at 2670 and 2656.) 417 U.S. at 833, 94 S.Ct. at 2809.

Again in *Pell v. Procunier,* supra, the Court said:

"The constitutional guarantee of a free press 'assures the maintenance of our political system and an open society,' *Time, Inc. v. Hill,* 385 U.S. 374, 389 [87 S.Ct. 534, 543, 17 L.Ed.2d 456] (1967), and secures 'the paramount public interest in a free flow of information to the people concerning public officials,' *Garrison v. Louisiana,* 379 U.S. 64, 77 [85 S.Ct. 209, 217, 13 L.Ed.2d 125] (1964). See also *New York Times Co. v. Sullivan,* 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686] (1964). By the same token, ' "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." ' *New York Times Co. v. United States,* 403 U.S. 713, 714 [91 S.Ct. 2140, 2141, 29 L.Ed.2d 822] (1971); *Organization for a Better Austin v. Keefe,* 402 U.S. 415 [91 S.Ct. 1575, 29 L.Ed.2d 1] (1971); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 [83 S.Ct. 631, 639, 9 L.Ed.2d 584] (1963); *Near v. Minnesota ex rel. Olson,* 283 U.S. 697 [51 S.Ct. 625, 75 L.Ed. 1357] (1931). Correlatively, the First and Fourteenth Amendments also protect the right of the public to receive such information and ideas as are published. *Kleindienst v. Mandel,* 408 U.S. [753], at 762–763 [92 S.Ct. 2576 at 2581–82, 33 L.Ed.2d 683];

*Stanley v. Georgia,* 394 U.S. 557, 564 [89 S.Ct. 1243, 1247, 22 L.Ed.2d 542] (1969)." 417 U.S. at 832, 94 S.Ct. at 2809.

In *Houston Chronicle Publishing Company v. City of Houston,* Tex.Civ.App., 531 S.W.2d 177, 82 A.L.R.3d 1 (1975), where the right of police record availability was denied as it has been here, the Texas court, in supporting the Chronicle's right of access, said:

"We hold that the press and the public have a constitutional right of access to information concerning crime in the community, and to information relating to activities of law enforcement agencies. In determining the reach of this constitutional right of access, it is necessary to weigh and evaluate legitimate competing interests."

According to the *Houston Chronicle* court, the "competing interests" which the custodian must take into account when exercising discretion are discussed as follows:

"As applied to this case, the competing legitimate interests are clear and important. The first legitimate interest to be considered is the people's right to know. This interest is particularly sensitive and important as applied to police activity. The increasing crime rate is a subject of paramount importance to the public. We have, on the one hand, those who fear that the activities of the police will lead to impositions on the individual in the form of wire tapping or police brutality. Their focus of concern is on the creation of a police state. On the other hand, we have those with a legitimate fear of ever increasing criminal activity, violence, and unsafe streets.

"The City and State have a legitimate interest in preserving the secrecy of their records from the eyes of defendants and their counsel in criminal actions. The trial of a criminal case is an adversary proceeding. Whatever we hold to be available to the press must also be available to the public. At the present time the records contained in the offense report are not available to criminal defense counsel except in cases where good cause is shown in a motion under the discovery provisions of the Code of Criminal Procedure. * * * Discovery of such reports has been denied. * * *.

"Furthermore, the state has a legitimate interest in preventing excess publicity which might lead to a denial of due process and endanger the prosecution. See *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)." 531 S.W.2d at 186.

We confirm that First and Fourteenth Amendment constitutional rights of access to the police records may be and in Wyoming are conditioned by statutory restrictions and balanced with relevant competing-interest considerations. The Public Records Act does not make all records available for public inspection in all circumstances. The legislature does indeed have authority to promulgate and has imposed such statutory restraints upon the news-gathering business as will best serve the public good. These restraints may not, however, unlawfully deny the people's right to be kept informed. A restriction having this effect would run the risk of a First or Fourteenth Amendment violation.

■ Given the policy of the state as announced through the Public Records Act,[14] the custodian, in any exercise of his right to withdraw, must confine his withdrawal discretion to those areas and circumstances prescribed by this Act. Having taken this restriction into account, the custodian must then employ his discretion on a selective basis rather than through the withdrawal of entire categories of public records—as was done by the chief of police in this case. Since the public policy which pertains to the Public Records Act speaks to the philosophy of disclosure, it is therefore contrary to that philosophy for the police chief to withdraw entire categories of public records—or any public records—without first addressing the

14. The policy of the state is on disclosure—not secrecy. *Laramie River Conservation Council* *v. Dinger,* supra.

issue which asks whether or not the withdrawal of *individual* records, documents, or portions thereof violates provisions of the Act. In other words, the language of the statute imposes a legislative presumption which says that, where public records are involved, the denial of inspection is contrary to the public policy, the public interest and the competing interests of those involved. This, then, places the burden of proof upon the custodian to show that the exercise of his discretion does not run afoul of statutory limitations in any particular instance where custodial withdrawal is effected.

Consistent with the thought that the blanket withdrawal of the rolling log and case reports are violative of the statutory and constitutional rights of the appellant, we hold that the appellee cannot sustain a denial of access to the rolling log and case reports on the ground that the records may, from time to time—or occasionally—or sometimes—contain exempt investigatory material. See: *Northern California Police Practices Project v. Craig,* 90 Cal.App.3d 116, 153 Cal.Rptr. 173 (1979); *Johnson v. Winter,* 127 Cal.App.3d 435, 179 Cal.Rptr. 585 (1982); *State ex rel. Stephan v. Harder,* 230 Kan. 573, 641 P.2d 366 (1982); *Department of the Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242 (D.C. Cir.1977); *Environmental Protection Agency v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

*Northern California Police Practices Project v. Craig,* supra, was an action brought by a civil liberties organization and others against the State Highway Patrol, seeking disclosure under the Public Records Act of material utilized by the patrol training officers. The court held that the plaintiffs were entitled to nonsensitive materials contained in documents otherwise exempt from disclosure. The Court of Appeals said:

"The PRA is modeled upon the Federal Freedom of Information Act (FOIA) (*Cook v. Craig,* supra, 55 Cal.App.3d [773] at p. 781, 127 Cal.Rptr. 712). Like the PRA 'The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.' * * * While it is true that Congress amended the FOIA in 1974 expressly to require disclosure of '[a]ny reasonably segregable portion of a [public] record' (5 U.S.C. § 552(b)), the amendment only codified the interpretation theretofore accorded the Act by the federal courts. * * * Similarly, the PRA has been judicially interpreted to require segregation of exempt from nonexempt materials contained in a single document. (*American Federation of State, etc. Employees v. Regents of University of California* (1978) 80 Cal.App.3d 913, 919, 146 Cal.Rptr. 42)." 153 Cal. Rptr., at 178.

The California Court of Appeals also said in *Johnson v. Winter,* supra:

"* * * The PRA has been judicially construed to require that where nonexempt materials are not inextricably intertwined with exempt materials and are reasonably segregable, segregation and disclosure of the nonexempt materials is required to satisfy the objectives of the act. (*Northern Cal. Police Practices Project v. Craig* (1979) 90 Cal.App.3d 116, 123–124, 153 Cal.Rptr. 173). We also note that the PRA has recently been amended to provide that when a request is received for a copy of records, any 'reasonably segregable portion of a record' is to be provided after deletion of the portions which are exempt by law. (Stats.1981, ch. 968, § 3.5.)" 179 Cal.Rptr. at 588–589.

*State ex rel. Stephan v. Harder,* supra, was a declaratory-judgment action which sought disclosure of names of physicians and the amount of public funds paid to each for abortions performed during a particular time period. The public records involved contained both confidential and nonexempt information. In this regard, the Kansas court said:

"We have seen that the information requested exists as a part of official public

records which are by law required to be kept and maintained. The same records, however, contain information which is by law confidential and may not be released. We think it is far more consistent with the purpose of the Kansas public records inspection act to interpret that act as we now do. We hold that the act implies a duty upon the agency to delete confidential and nondisclosable information from that which may be disclosed, and thus to carry out the act's purpose of making available for public inspection all disclosable parts of the public record. Were this not so, any record which an agency is required by law to keep could be rendered inaccessible to public scrutiny by including confidential material therein." 641 P.2d at 374.

In *Mead Data Central, Inc. v. U.S. Department of Air Force,* supra, the Court of Appeals for the District of Columbia holds as follows:

"The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material. It has long been a rule in this Circuit that nonexempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions. In 1974, Congress expressly incorporated that requirement into the FOIA, which now states that '[a]ny reasonably segregable portion of a record shall be provided * * * after deletion of the portions which are exempt.' 5 U.S.C. § 552(b) (Supp.V 1975)." 566 F.2d at 260.

Provisions of the Freedom of Information Act were construed in *Environmental Protection Agency v. Mink,* supra. Regarding the mixture of exempt and disclosable material in the same documents, the Supreme Court said:

" * * * Congress sensibly discarded a wooden exemption that could have meant disclosure of manifestly private and confidential policy recommendations simply because the document containing them also happened to contain factual data. That decision should not be taken, how-ever, to embrace an equally wooden exemption permitting the withholding of factual material otherwise available on discovery merely because it was placed in a memorandum with matters of law, policy, or opinion. It appears to us that Exemption 5 contemplates that the public's access to internal memoranda will be governed by the same flexible, common-sense approach that has long governed private parties' discovery of such documents involved in litigation with Government agencies. And, as noted, that approach extended and continues to extend to the discovery of purely factual material appearing in those documents in a form that is severable without compromising the private remainder of the documents." 410 U.S. at 91, 93 S.Ct. at 838.

From these authorities, it can be concluded that the City of Sheridan and its chief of police may not deny inspection of individual or classes of documents, including rolling logs and case reports, simply because some exempt material may be contained in those records. Neither can a particular police record—again including a rolling log or case report—be withdrawn where it is possible for the sensitive information to be excised and the balance of the record made available to public inspection. Exempt material can be segregated. The records may be structured to provide the information the public is entitled to have. *Houston Chronicle Publishing Company v. City of Houston,* supra. The chief of police must exercise discretion to deny inspection of case reports where disclosure would impair an investigation or compromise the prosecution of a case, or where the custodian is otherwise exercising his discretion within the authority of the Wyoming Public Records Act. The judgment of the trial court, as it now stands, provides for blanket exemption of these categories of records, absent a showing that the documents qualify for lawful withdrawal. This is not permissible under the Public Records Act. The appellant has both a statutory and constitutional right of access to the rolling log and the case reports.

■ For the custodian to identify a document or portions thereof as falling within a category which statutorily qualifies for withdrawal is not to say that the document or piece of information may in fact be withdrawn. Where police-record information is identified as being qualified for withdrawal, the custodian must still exercise his discretion within the parameters of statutory restrictions. He must next test any contemplated withholding decision by asking whether withdrawal will be in the public interest. The issue of custodial withdrawal procedure and the standards for the exercise of discretion was addressed in *Newspapers, Inc. v. Breier,* 89 Wis.2d 417, 279 N.W.2d 179, 184 (1979), where the court said:

"To implement this presumption [that withdrawal is contrary to the public interest], our opinions have set out procedure and legal standards for determining whether inspection of records is mandated by the statute. In the first instance, when a demand to inspect public records is made, the custodian of the records must weigh the competing interests involved and determine whether permitting inspection would result in harm to the public interest which outweighs the legislative policy recognizing the public interest in allowing inspection. *Beckon v. Emery,* [36 Wis.2d 510, 153 N.W.2d 501, 503 (1967).] If the custodian decides not to allow inspection, he must state specific public-policy reasons for the refusal. These reasons provide a basis for review in the event of court action. * * * The custodian of the records must satisfy the court that the public policy presumption in favor of disclosure is outweighed by even more important public-policy considerations.

"Whether harm to the public interest from inspection outweighs the public interest in inspection is a question of law. The duty of the custodian is to specify reasons for nondisclosure and the court's role is to decide whether the reasons asserted are sufficient. It is not the trial court's or this court's role to hypothesize reasons or to consider reasons for not allowing inspection which were not asserted by the custodian. If the custodian gives no reasons or gives insufficient reasons for withholding a public record, a writ of mandamus compelling the production of the records must issue. *Beckon,* supra, 36 Wis.2d at 518, 153 N.W.2d at 504 states, '[T]here is an absolute right to inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary.' (Emphasis supplied.)" (Bracketed material added.)

■ We agree that the procedure outlined in *Newspapers, Inc.,* supra, and *Beckon v. Emery,* 36 Wis.2d 510, 153 N.W.2d 501 (1967), for the exercise of the custodian's discretion is sound. The kinds of factors which he must consider in contemplating nondisclosure of public information are recognized competing legitimate interests—such as the public's right to know—the crime rate, as a factor of importance to the public—the concern of those who fear that police activity will interfere with their individual rights as those fears are balanced against the concerns of those who perceive law enforcement to be too lax and inadequate. The custodian must protect the prosecutorial and investigatory process but, in doing this, may not carelessly withhold public information under the guise that it has prosecutorial or investigatory value when such is not the case. There may be other public-interest concerns which the law recognizes and which may properly be ground into the discretion-exercising process, but they must be real and not fancied, and they must contain public and/or private welfare considerations which will have a lawful counterbalancing effect when placed on the scales in the public-interest weighing process.

■ Given the provisions of our Public Records Act, § 9–9–101 through § 9–9–105, we find the contemplation of the great issues as discussed in *Newspapers, Inc. v. Breier,* supra, *Beckon v. Emery,* supra, and *Houston Chronicle Publishing Company v. City of Houston,* supra, to be sound. In Wyoming, public records (including police records) are to be open to the public unless

the custodian—after restricting his decision-making to areas authorized by statute and after weighing the competing interests involving the public's right to know against specific statutory mandate and perceived harm to the public interest through disclosure—decides to withdraw the record or a part thereof. When he does withdraw records, reasons therefor must be given so that these reasons may provide grounds for review should court action result (see nn. 6 and 7, supra). In that event, the custodian must be able to satisfy the court that, in the balancing process, statutory withdrawal, when viewed in the spotlight of public-interest protections, outweighs the public policy which emphasizes disclosure. If, however, the custodian gives either no reasons or inadequate reasons for withdrawal, appropriate legal action is available to force an automatic disclosure of the records. *Newspapers, Inc. v. Breier,* supra.

As we have noted, the Wyoming statutes provide that the custodian may withdraw from inspection only such records as may be described as investigatory or intelligence, or those compiled for prosecution purposes. See § 9–9–103(b)(i), W.S.1977, 1982 Cum. Supp., supra n. 5. It is for us, then, to decide whether "rolling logs" and "case reports" are investigatory or intelligence records, or records compiled for prosecution purposes. If these categories of records do fall within these statutory classifications, we must then resolve the question which asks whether or not the public interest required their withdrawal. Ancillary to these main issues is the question which wants to know whether the custodian furnished adequate reason for withdrawing these categories of public records even if they do fall within the statutory categories which qualify them for withdrawal, and even if public-interest considerations weigh in favor of nondisclosure.

■ We therefore address the first question, which is: Are the rolling logs and case reports investigatory and/or intelligence records within the meaning of the statute, or are they records compiled for such prosecution or law-enforcement pur-

poses as are contemplated by statute? It is clear to us that *all* information in these categories of public police records does not fall within the statutory investigatory or prosecutorial exemptions of the statute. As a matter of fact, the chief of police testified that the rolling-log information is not acquired as a result of investigatory activity (supra, n. 8) We do not, however, doubt that *some* information in these records (particularly the case reports) may well fall within these statutorily authorized withdrawal categories. We have, however, no way of knowing what public-interest considerations the custodian took into account which he perceived would outweigh the state's policy of nondisclosure. Given the condition of the record, we are unable to ascertain whether the records were investigatory in character—and, if they were, what competing interests the chief was balancing which would permit him to come to the conclusion that the public good required the press be denied their access. There is no disclosure of this information in the record, unless it can be said that, with reference to the rolling log, the custodian wanted to protect those who called in with initial complaints and information. We consider this explanation given for withdrawal to be insufficient in that the relevant provisions of the Public Records Act did not give the chief of police of Sheridan blanket authority to withdraw the rolling log and case reports from public inspection out of any such inadequate considerations. These categories of public records may not be carte blanche described as the kinds of records that the statutes permit the custodian to withdraw from press and public inquiry. There may be some investigatory or prosecutorial information or records within these categories of police documents, but such information has not been sorted out for selective withdrawal and the action of the chief of police in invoking blanket withholding instead of withdrawal on a case-by-case or record-by-record basis, according to statutory authority, is not shown to be justified.

■ Having said this about the first query (i.e., Do the rolling logs and case

reports fall into the categories of information with respect to which the custodian may exercise his right of withdrawal?), the second and third questions seem to answer themselves. Since there is no showing whether the two categories of withdrawn records contain investigatory or prosecutorial material, or are otherwise statutorily qualified for withdrawal, we are only able to say that the record at least is such that it must be concluded that these records *as a class* could not be withdrawn, but we cannot say—because of lack of proof—whether or not the public's interest would require *any* particular records or portions of records to be withdrawn. Lastly, it follows from what we have said that the custodian has failed to show adequate reason for record-withdrawal. Nondisclosure cannot rest upon the chief's decision to exclude public records from inspection just because the people whose names have appeared in the newspaper have become irate; nor will non-disclosure be permitted to rest upon the pique that the chief of police has with the way the newspaper gathers its news.

It was said in *Nebraska Press Association v. Stuart*, 427 U.S. 539, 613, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976):

" * * * [T]he press may be arrogant, tyrannical, abusive and sensationalist, just as it may be incisive, probing and informative. But at least in the context of prior restraints on publication, the decision of what, when, and how to publish is for editors not judges * * * "—

or—we might add—the keepers of public records.

Case No. 5724 is reversed.

### DECISION IN CASE NO. 5725

In Case No. 5725, it is the City of Sheridan that seeks relief from the judgment of the court. The trial court ordered that the public be permitted to inspect the "jail log," "reports of the investigation of vehicular and traffic accidents" and "complaints and citations issued." The court further ordered that there was nothing to preclude the chief of police from excluding any of those records from public scrutiny providing he did so

"on a case by case basis * * * it being understood that such exclusion shall be only on a very limited basis and only upon extraordinary circumstances and for good cause shown and then only for such limited time as may be necessary."

The appellant frames the statement of the issues as follows:

"(1) Assuming that a jail log, reports of investigations of vehicular and traffic accidents and complaints and citations prepared and maintained by a police department are 'public records' within the context of the Wyoming Public Records Act, has the District Court imposed additional requirements not included in or contemplated by the Statute upon the Custodian when he considers denying the right of inspection of such records and thereby, in effect, granted a permanent injunction preventing the Custodian of those records from carrying out his statutory duty by:

(a) imposing upon him a requirement that any restriction of such records be on a 'case-by-case basis'?, and

"(b) by imposing upon him a requirement that any restriction upon access to such records 'shall be only on a very limited basis and only upon extraordinary circumstances and for good cause shown and then only for such limited time as may be necessary'?"

We will affirm the trial court and hold that the court's order does not impose any restrictions upon the custodian of police records which is not authorized by statute.

We do this on the theory that we perceive the trial court to be carrying out the law pertaining to the Wyoming Public Records Act as we have described our understanding of the law in the foregoing opinion in Case No. 5724, where Sheridan Newspapers, Inc. is the appellant.

By his order, the judge has simply said that the documents in question may be withdrawn from public view when, in the discretion of the custodian, the statutorily authorized conditions exist. (See n. 5, where the withdrawal conditions under

§ 9–9–103 are set out.) We understand the judge's order to hold that the documents in question are public records and that they must stand for public inspection unless inspection is foreclosed by order or rule of the Supreme Court (§ 9–9–103(a)(iii)), or the custodian finds the public interest to require withdrawal of any of the records or portions thereof as contemplated by § 9–9–103(b)(i).

According to our interpretation of the court's order, instead of restricting the custodian's authority under the statute, the court was attempting to specify the conditions for withdrawal that were contemplated by the statute where it is provided that the custodian may exercise his discretion to withdraw the questioned document when it is in the public interest, as contemplated by § 9–9–103(b)(i). Thus, the trial judge has said that the "jail log," "reports of the investigation of vehicular and traffic accidents" and "complaints and citations" could be withdrawn by the custodian "on a case by case basis" for a "very limited" time under "extraordinary circumstances" for "good cause shown." We interpret the "cause" mentioned in the phrase "good cause shown" to be the cause contemplated by § 9–9–103(a)(iii) or (b)(i). Of course, if the court in fact sought to permit the custodian to withdraw public records for some cause which was not contemplated by the Public Records Act, then such withdrawal would be in violation of the statute and the public policy of the state which recognizes disclosure and rejects public-record withholding except where authorized by statute. *Laramie Rivers Conservation Council v. Dinger,* supra.

But this is not the way we understand the court's order. We understand it to be an attempt to define the authority of the records custodian within the parameters of the statute and the law pertaining to the subject of public-records withdrawal as discussed in our opinion in Case No. 5724, and it is with this understanding that we affirm the judgment.

Case No. 5725 is affirmed.

ROONEY, Chief Justice, concurring in Case No. 5724 and dissenting in Case No. 5725, with whom RAPER, Justice, joins.

At the outset, I want to emphasize that I believe the City [1] acted improperly in denying to the Newspaper [2] access to general information contained in its records. This right to access is specifically and positively set forth in the Wyoming Public Records Act, §§ 9–9–101 through 9–9–105, W.S. 1977 (now §§ 16–4–201 through 16–4–205, W.S.1977, 1982 Replacement). I disagree with the dicta in the majority opinion which would extend by judicial fiat the perimeters of the right of access beyond that specifically set forth in such act.

I agree that access cannot be denied to entire categories of records simply because one or more of the items therein may be that to which access can properly be denied. However, if the category includes only that to which access can properly be denied, access to the category itself can properly be denied, e.g. a category of pending investigative matters. In this instance the "rolling log" record and "case report" record were categorized types of records containing information other than that excepted by statute from public access, and the City could not properly deny access to them.

If the City first recorded incoming calls and complaints on index cards which were directed into an area of specific action whereby the investigative or intelligence information was immediately separated, there could be a different result. Today, the initial information can be computerized to obtain the same end. Investigative and intelligence information can be immediately segregated, and access to the specifically segregated information can properly be denied. Such was not done in this instance, and the City's action was contrary to that required by the Wyoming Public Records Act.

My basic disagreement with the majority opinion is the establishment by it of a re-

---

1. Appellee in Case No. 5724—appellant in Case No. 5725 is referred to herein as "City."

2. Appellant in Case No. 5724—appellee in Case No. 5725 is referred to herein as "Newspaper."

quirement over and beyond the statutory requirement for denying access to police investigative reports[3], intelligence information[4], and security procedures. The statutory language with reference to police records is plain and unambiguous:

"(b) The custodian may deny the right of inspection of the following records, unless otherwise provided by law, on the ground that disclosure to the applicant would be contrary to the public interest;

"(i) Records of investigations conducted by, or of intelligence information or security procedures of, any sheriff, county attorney, city attorney, the attorney general, police department or any investigatory files compiled for any other law enforcement or prosecution purposes." Section 9–9–103(b)(i), W.S. 1977 (now § 16–4–203, W.S.1977, 1982 Replacement).

In construing a statute, its words must be given their plain and ordinary meanings, *Jahn v. Burns,* Wyo., 593 P.2d 828 (1979); *Schwager v. State,* Wyo., 589 P.2d 1303 (1979); *Belco Petroleum Corporation v. State Board of Equalization,* Wyo., 587 P.2d 204 (1978). When a statute is clear and unambiguous, there is no need to resort to rules of construction and the court may not look for or impose another meaning. *Board of County Commissioners of County of Campbell v. Ridenour,* Wyo., 623 P.2d 1174, reh. denied 627 P.2d 163 (1981); *State v. Sinclair Pipeline Company,* Wyo., 605 P.2d 377 (1980); and *Hayes v. State,* Wyo., 599 P.2d 558 (1979).

The statute provides in plain, simple language that the custodian may deny the right to inspect police (1) records of investigation, (2) intelligence information, or (3) security procedures on the ground that disclosure would be contrary to the public in-

terest. In other words, once inspection of the specific type of record is requested, denial to do so can be made on the ground that such would be contrary to the public interest. The custodian need not exercise additional discretion. The legislature has decided that these types of records fall into the status whereby inspection would be contrary to the public interest, and that inspection of them may be denied for that reason. The majority opinion would require the custodian to decide whether or not these records are such that inspection would be contrary to the public interest. The legislature has already made this decision. In the absence of statute, police records are generally held to be confidential, *Whittle v. Munshower,* 221 Md. 258, 155 A.2d 670 (1959), cert. denied 362 U.S. 981, 80 S.Ct. 1069, 4 L.Ed.2d 1016 (1960). Our statute relaxes this confidentiality, but only to the extent set forth in the statute. It specifies that only information from investigative reports, intelligence information and security procedures is to be in the realm of that which disclosure would be contrary to the public interest. Therefore, disclosure to such information may be denied on that basis without more.

Of course, labeling information as "investigative" or "intelligence" or "security procedure" does not make it so. One seeking information is entitled to a court determination of the propriety of such labeling. This determination can be made in camera or otherwise. *Conway v. United States Internal Revenue Service,* 447 F.Supp. 1128 (D.C.Cir.1978). 5 U.S.C. § 552(a)(4)(B) specifically permits in camera examination under the federal act at the discretion of the court. In this instance, the records in question may have contained some investigative

---

**3.** Investigative records are those compiled for law enforcement purposes through inquiry, information or observation. See *Williams v. Internal Revenue Service,* 345 F.Supp. 591 (D.C. Del.1972), aff'd 479 F.2d 317, cert. denied 414 U.S. 1024, 94 S.Ct. 448, 38 L.Ed.2d 315 (1973); and *Stein v. Department of Justice and FBI,* 662 F.2d 1245 (7th Cir.1981).

**4.** Intelligence information is that obtained from sources which would provide information only

on a confidential basis or that pertaining to matters or persons believed to be furnished only if kept confidential to such matters or persons. See *Alfred A. Knopf, Inc. v. Colby,* 509 F.2d 1362 (4th Cir.1975), cert. denied 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 482, reh. denied 422 U.S. 1049, 95 S.Ct. 2669, 45 L.Ed.2d 702 (1975); *Sims v. Central Intelligence Agency,* 642 F.2d 562 (D.C.Cir.1980).

or intelligence matters, but that fact would not prevent access by the Newspaper to the records. If City wanted to prevent disclosure of such investigative and intelligence matter, it should not have been included in the broad category with many other types of information. For this reason, I concur in the result reached by the majority opinion in Case No. 5724.

I dissent from the result reached by the majority opinion in Case No. 5725 because I believe the trial court added requirements to those set forth by statute for denying access to police investigative reports, intelligence information and security procedures. The statute does not require "extraordinary circumstances," "good cause shown" or a limitation on time for denial of access. As already noted, the statute is plain in setting forth the requirements. They are not to be enlarged by judicial legislation.

Take an example. Information is requested concerning security procedures taken by the police acting in cooperation with the secret service for protection of the president on a visit to the city. All the custodian of the records need write in refusing such access is that the disclosure would be contrary to public interest. On challenge in court pursuant to statute and with reference to statutory requirements, the court need only satisfy itself that the information was of security procedures. It would be unnecessary to decide whether or not the placing of guards at specific points was in the public interest; whether or not back-up personnel was being strategically placed in the public interest; whether or not crowd infiltration was needed and in the public interest; whether or not dog-assisted inspection of a meeting place was in the public interest, and so on.

With the requirements added by the majority opinion, the custodian would also have to show "good cause" to place personnel on roof tops and other places, to infiltrate the crowd, to search the meeting place, etc. He would have to show extraordinary circumstances in protecting this visit as distinguished from other presidential visits. He could limit access for only a limited

time even though the same procedures are used for other visits and lose much of their efficacy if they become well known.

I believe the plain words of the statute set forth the requirements for refusing disclosure and an effort to enlarge or embellish such is improper. For this reason, I dissent from the majority opinion in Case No. 5725.