DAYTON NEWSPAPERS, INC., D. B. A. THE DAYTON DAILY NEWS, APPELLANT, *v.* CITY OF DAYTON ET AL., APPELLEES.

[Cite as Dayton Newspapers v. Dayton (1976), 45 Ohio St. 2d 107.]

(No. 75-343—Decided February 11, 1976.)

108

[black redaction boxes]

Messrs. *Estabrook, Finn & McKee,* Mr. *Robert P. Bartlett, Jr.,* and Mr. *Thomas L. Czechowski,* for appellant.

Mr. *James W. Drake,* city attorney, and Mr. *Edward B. Neuman,* for appellees.

Mr. *Stanley K. Laughlin, Jr.,* for other interested parties.

WILLIAM B. BROWN, J. Speaking for a unanimous court in *State, ex rel. White,* v. *Cleveland* (1973), 34 Ohio St. 2d 37, 40, Justice Corrigan states "* * * that R. C. 149.43 establishes a public right to the inspection and copying of public records and imposes upon municipal corporations the mandatory duty to permit same." The Dayton jail log is certainly a "record." If it is "required to be kept" by the city, appellees must grant access to appellant because the log does not come within any of the exceptions set forth in R. C. 149.43.

This court has not directly considered the "required to be kept" element of R. C. 149.43. That element is ambiguous, and the reason for its insertion in the statute is not readily apparent. Appellees urge that we construe it to mean required by statute (or at least, by the official policy of a unit of government) to be kept. We would be more readily inclined to follow appellees' argument if the statute stated "required *by law* to be kept." Cf. *State, ex rel. Grosser,* v. *Boy* (1975), 42 Ohio St. 2d 498.

On the other hand, appellant would have the statutory phrase describe any record which but for its keeping the governmental unit could not carry out its duties and re-

sponsibilities; that the *raison d'etre* of such record is to assure the proper functioning of the unit. We accept the interpretation suggested by appellant, and, in so doing, we reject the holdings of the courts below that the Dayton jail log is not a "public record" subject to disclosure.

Prior to the enactment of R. C. 149.43 in 1963 (130 Ohio Laws 155), this court, in *State, ex rel. Patterson,* v. *Ayers* (1960), 171 Ohio St. 369, affirmed the issuance of a writ of mandamus to allow inspection of Bureau of Motor Vehicles records. Although the statute therein declared that *all* records of the bureau were "public records," we find instructive the approach taken by the court on the question of access. Judge Zimmerman, at page 371, quoted with approval the following passage from Ohio Jurisprudence:

"The rule in Ohio is that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people; therefore anyone may inspect such records at any time, subject only to the limitation that such inspection does not endanger the safety of the record, or unreasonably interfere with the discharge of the duties of the officer having custody of the same." And then he stated, at page 372:

"How far the General Assembly might go in limiting access to and inspection of public records is not now before us. Suffice it to say, such body has not *denied* the right to inspect the records in the office of the Registrar of Motor Vehicles in the respect demanded by relator. We do not doubt that the registrar may establish and enforce reasonable rules and regulations covering the examination of the records in his custody and control to insure the orderly and efficient operation of his department, but under the statutes in their present wording he may not arbitrarily and wholly close those records to public view." (Emphasis *sic*.)

See, also, *State, ex rel. Louisville Title Ins. Co.,* v. *Brewer* (1946), 147 Ohio St. 161, 164, which involved a similar mandamus action wherein a title research company requested access to a special card index for land records kept by the Probate Court of Cuyahoga County. (The writ was

denied, but the court failed to indicate which of numerous valid grounds were determinative in refusing relief.)

On the basis of *Ayers, supra* (171 Ohio St. 369), we believe that doubt should be resolved in favor of disclosure of records* held by governmental units. Aside from the exceptions mentioned in R. C. 149.43, records should be available to the public *unless* the custodian of such records can show a legal prohibition to disclosure. Cf. R. C. 121.22 (A), as amended November 28, 1975.

The decision to allow access to governmental records should not rest solely with the custodian. "Law has reached its finest moments when it has freed man from the unlimited discretion of some ruler, some civil or military official, some bureaucrat. Where discretion is absolute, man has always suffered." *United State* v. *Wunderlich* (1951), 342 U. S. 98, 101, Douglas, J., dissenting.

We hold that the information contained in the Dayton jail log is required to be kept in the operation of the jail. Accordingly, the judgment of the Court of Appeals is reversed, and the cause its remanded to the Court of Common Pleas for further proceedings consistent with this opinion.

*Judgment reversed.*

O'Neill, C. J., Herbert, Corrigan, Stern, Celebrezze and P. Brown, JJ., concur.

Corrigan, J., concurring. Unreservedly, I join in the judgment and opinion of Justice William B. Brown. An additament occurs to me in connection with the constitutional requirement of due process.

The Fifth Amendment to the United States Constitution mandates that no person shall "be deprived of * * * liberty * * * without due process of law," thereby securing

---

*" 'A public record has been defined as a record required by law to be kept, *or necessary to be kept*, in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done. * * *' " (Emphasis added.) *State* v. *Brooks* (1971), 27 Ohio St. 2d 144, 147.

this right against invasion by the federal government. The right is safeguarded against state action by the Fourteenth Amendment. As the United States Supreme Court said, in *Betts* v. *Brady* (1942), 316 U. S. 455, 462: "* * * The phrase formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of the facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness shocking the universal sense of justice, may, in other circumstances, and in the light of other considerations fall short of such a denial. * * *"

Due process then is measured by that whole community sense of decency and fairness that has been woven into the fabric of acceptable conduct. "* * * It is on this bedrock that this court has established the concept of due process," said the United States Supreme Court in *Breithaupt* v. *Abram* (1957), 352 U. S. 432, 436.

The city of Dayton assumes that the "Jail Register" is kept only for a "convenience" of the jailer, and, as such, is exempt from the state open-records law because no official record of who is in the jail is required by statute, ordinance or court rule. If a person is arrested on a warrant, of course there is a record of that arrest. But, if a person is arrested without a warrant having been issued, then, according to the city of Dayton, it is not necessary to keep a record, although the "Jail Register" is kept. During oral argument of this case before us, counsel for the city of Dayton was asked, "What is the record of an arrest when no warrant is issued?" "There is none," he answered, "but there is no requirement for such a record."

Such an attitude on the part of an arresting authority does not comport with due process in my opinion. The right of a person to due process begins when he is arrested. If a warrant has not been issued, he has a right, under Crim R. 4(E)(2), to have the arresting officer without unnecessary delay bring him before a court having jurisdiction of the offense for which he was arrested; he has a right to

release after arrest, as provided by Crim. R. 4(F), under certain circumstances by the arresting officer or his superior without unnecessary delay; and, at the time of his arrest, he has a right to be informed of the cause of his arrest, a right to certain warnings if he is to be interrogated and a right to counsel. If there is no official arrest record at the jail, except the private log of the jailer, how is it to be determined if there was unnecessary delay in according the person arrested his rights? How is his family or a friend going to learn of his arrest if, on inquiry, they are advised there is no official record? The constitutional foundation underlying these rights is the respect a state or city must accord to the dignity and worth of its citizens. It is an integral part of constitutional due process that a public record of such arrests be maintained.

CELEBREZZE and P. BROWN, JJ., concur in the foregoing concurring opinion.