WOOSTER REPUBLICAN PRINTING COMPANY, D. B. A. THE
WOOSTER DAILY RECORD, APPELLEE, v. CITY OF WOOSTER
ET AL., APPELLANTS.

(No. 77-1338—Decided December 4, 1978.)

128

130

*Messrs. Taggart, Cox & Hays*, and *Mr. D. William Evans, Jr.*, for appellee.

*Mr. H. Lloyd Cornelius*, director of law, for appellants.

I.

LEACH, C. J. A proper resolution of the issues involved herein requires a careful analysis of the somewhat loosely drafted R. C. Chapter 1347 and R. C. 149.43. This task is complicated by an absence of any attempt by the

General Assembly to coordinate these two pieces of inter-relating legislation into a clear statutory and regulatory scheme. Additionally, a literal reading of this court's opinion in *Dayton Newspapers* v. *Dayton, supra* (45 Ohio St. 2d 107), without a recognition that it preceded the effective date of R. C. Chapter 1347 and dealt with substantially different types of information kept by a public agency, lends confusion to the problem.

R. C. 149.43 reads, in pertinent part:

"* * * 'public record' means *any record required to be kept* by any governmental unit * * * except records pertaining to physical or psychiatric examination * * *, and records the release of which is prohibited by state or federal law." (Emphasis added.) In *Dayton Newspapers* this court stated in the syllabus that "[a] record is 'required to be kept' by a governmental unit, within the meaning of R. C. 149.43, where the unit's keeping of such record is necessary to the unit's execution of its duties and responsibilities." At pages 108 and 109 in the opinion, a "public record" was described as "any record which but for its keeping the governmental unit could not carry out its duties and responsibilities * * *."

Appellee newspaper maintains that since all the "records"[3] in question are necessary in order for the city to carry out its various responsibilities to the public, they are all "public records" and, therefore, must be disclosed. The city contends, in effect, that *Dayton Newspapers, supra,* if literally applied, would completely negate the General Assembly's intent in passing R. C. Chapter 1347, which became effective subsequent to this court's decision

---

[3]R. C. 149.40 defines the term "records" as:

"Any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office, is a record within the meaning of sections 149.31 to 149.44 * * *."

Based upon this definition, the exhibits are "records" as contained in R. C. 149.43. The issue here is whether R. C. 149.43 requires that they be made available for public inspection and copying.

in *Dayton Newspapers*. The city contends further that to allow public access to police (and other law enforcement) investigative records would seriously impair their ability to control, prevent and investigate crime.

We disagree with appellee's contention that this court's decision in *Dayton Newspapers* impels that all information contained in the records in question must be made public. R. C. 149.43 must be read *in pari materia* with R. C. Chapter 1347.[4] It is a well-settled principle of statutory construction that statutory provisions must be construed together.[5] In essence, the doctrine requires that the Revised Code be read as an interrelated body of law. *State, ex rel. Pratt, v. Weygandt* (1956), 164 Ohio St. 463. More specifically, where two statutes are inconsistent, ordinarily the one which is the later declaration of the legislative intent should prevail. *Adkins* v. *Arnold* (1914), 235 U. S. 417; *Hillsborough County Commrs.* v. *Jackson* (1909), 58 Fla. 210, 50 So. 423.

The newspaper contends, in effect, that any information kept by a public agency which falls within the broad interpretation of the words "public record" as defined in *Dayton Newspapers, supra*, must be made available for public inspection and copying, and that everything within *Dayton Newspapers'* definition is exempt from the reach of R. C. Chapter 1347. To reach this result appellee apparently relies upon R. C. 1347.04(B), which states, in relevant part:

"The provisions of Chapter 1347 of the Revised Code

[4]In *State, ex rel. Patterson,* v. *Ayers* (1960), 171 Ohio St. 369, Judge Zimmerman, at page 371, cited the proposition that public records are the people's records and that people who have custody of them are merely trustees of the people. However, Judge Zimmerman did recognize the authority of the General Assembly to limit the access of the public, stating, at page 372, "[h]ow far the General Assembly might go in limiting access to and inspection of public records is not now before us." Effective January 1, 1977, the General Assembly exercised its authority to limit such access.

[5]See, generally, the cases and discussion of this doctrine at 50 Ohio Jurisprudence 2d 189, Statutes, Section 216 *et seq.*; and 73 American Jurisprudence 2d 475, Statutes, Section 331 *et seq.*

shall not be construed to prohibit the release of public records or the disclosure of personal information in public records that are required to be kept open for inspection by section 149.43 of the Revised Code * * *." Appellee contends that this section exempts all "public records" from R. C. Chapter 1347.

The court rejects this contention. If accepted by this court it would completely negate the legislative intent behind the enactment of R. C. Chapter 1347. A basic purpose of this Act is to protect the individual's rights to privacy with regard to public record keeping. Amended Substitute Senate Bill No. 99 of the 111th General Assembly, codified as R. C. Chapter 1347, states in its preamble that its objective is to "regulate the use of personal information by state and local governments * * * and to protect the privacy of individuals from excessive record keeping by government."

R. C. 149.43 states that all public records must be disclosed "except * * * records the release of which is prohibited by state * * * law." R. C. Chapter 1347 is the later expression of legislative will. R. C. 149.43, and the cases which have construed that section, cannot be read without reference to provisions in R. C. Chapter 1347, which may affect its heretofore broad reach. Thus, any prohibition in R. C. Chapter 1347 concerning the use of personal information contained in an otherwise "public record" necessarily modifies the scope of R. C. 149.43 in that the release of certain information is now in violation of state law.

Further, this court has consistently held that a syllabus must be read with reference to the facts thereof. *State v. Nickles* (1953), 159 Ohio St. 353; *Baltimore & Ohio Rd. Co. v. Baillie* (1925), 112 Ohio St. 567; *cf. DeLozier v. Sommer* (1974), 38 Ohio St. 2d 268. When the rule enunciated in *Dayton Newspapers, supra,* is read in light of the factual issue there at bar, a jail log, the more narrow reach of that holding becomes apparent. The specific issue which the court addressed was an interpretation of the phrase in R. C. 149.43, "required to be kept." Questions as to the "right of privacy" and whether investigative reports of law enforcement agencies were subject to compulsory dis-

closure were not present in *Dayton Newspapers.* Thus *Dayton Newspapers, supra,* is distinguishable from the cause at bar.

## II.

In addressing the issue of whether the Court of Appeals erred when it ordered that the Wooster Community Hospital admission and discharge records be made available for public inspection, it should be pointed out that the issue of an individual's right of privacy regarding personal information kept in otherwise public records is properly before this court for the first time.[6] It is self-evident that these are competing interests. To the extent that the public's right to know is satisfied, the individual's right of personal privacy may be frustrated. Likewise, to the extent that greater weight is given to personal privacy, the public will often be less well-informed.

This court, therefore, must weigh the public's right to know, as codified in R. C. 149.43, against the individual's right of personal privacy, codified in R. C. Chapter 1347. We believe that in resolving these conflicting interests a balancing test between the individual's right of privacy and the preservation of the public's right to know must

---

[6]Justice Corrigan, in a concurring opinion to which Justice Celebrezze and Justice Paul W. Brown concurred, stated that a "jail log" was constitutionally required to be kept as an integral part of a citizen's due process rights.

[7]In *State, ex rel. Grosser,* v. *Boy* (1975), 42 Ohio St. 2d 498, this court stated, at page 500, in a footnote to a *per curiam* opinion that the case then before it did not require a weighing of the effect of R. C. 149.43 on any right to individual privacy. This decision predated the effective date of R. C. Chapter 1347.

Chief Justice O'Neill, writing for a unanimous court in *State, ex rel. Beacon Journal Pub. Co.,* v. *Andrews* (1976), 48 Ohio St. 2d 283, rejected the assertion that certain provisions of R. C. Chapter 1347 were in direct conflict with R. C. 149.43, and that R. C. Chapter 1347 prevailed under the facts of that case, since R. C. Chapter 1347 would not take effect until January 1, 1977.

The issue of personal privacy was not before this court in *Dayton Newspapers, supra* (45 Ohio St. 2d 107). That case dealt only with the issue of whether a "jail log" kept at the municipal jail was a "public record."

be applied. In so doing, the following factors are to be considered: (1) Whether disclosure would result in an invasion of privacy and, if so, how serious; (2) the extent or value of the public interest, purpose or object of the individuals seeking disclosure; and (3) whether the information is available from other sources.[8]

In weighing these factors, however, doubt as to whether disclosure is proper should be resolved in favor of disclosure of "public records." *Dayton Newspapers, supra* (45 Ohio St. 2d 107, at page 110); *State, ex rel. Patterson, v. Ayers* (1960), 171 Ohio St. 639.

After weighing these factors, this court finds that the Wooster Community Hospital admission and discharge records are subject to compulsory disclosure. Any possible invasion of privacy is comparatively slight. The information sought includes *only* the name and address of the patient and the fact of admission and discharge.[9] Finally, the information is not available from other sources.[10] This

---

[8]In establishing this test, Ohio adopts the balancing test utilized by the federal courts in weighing similar interests found in the Federal Freedom of Information Act, Section 552b, Title 5, U. S. Code. *Campbell* v. *United States Civil Service Comm.* (C. A. 10, 1976), 539 F. 2d 58. Under the federal scheme, however, the right of the public of access to public information and the right of the individual to have certain information contained in public records remain undisclosed have been treated in a single statute. The Ohio statutes concerning these conflicting interests have not been treated in any unified or comprehensive manner, and R. C. Chapter 1347 makes only a passing reference to R. C. 149.43.

[9]This court agrees with the Court of Appeals that the release of admission and discharge information cannot be considered to be within the exception for records "pertaining to physical or psychiatric examinations" under R. C. 149.43. The release of this information does not reveal personal information concerning the individuals, such as the reason for admittance or the type of physical or psychological testing the patient underwent.

[10]It is important to point out that primary responsibility for determining what are proper *uses* of personal information contained in public records has been delegated to the Ohio Privacy Board by the General Assembly pursuant to R. C. 1347.02. Allowing the public to inspect personal information contained in a public record is a *use* of personal information by a public agency. R. C. 1347.06(B)(2) gives

court affirms the Court of Appeals with regard to the disclosure of these records.

### III.

In considering whether the Court of Appeals was correct in finding that the Wooster police (and other law enforcement) investigative records must be disclosed, R. C. 149.43 and R. C. Chapter 1347 must be similarly construed. To this end, R. C. 1347.08 is particularly instructive. It provides that upon proper request an individual about whom personal information is kept has the right to be informed of the existence of such information and the types of uses that are made of it. R. C. 1347.08(F), as amended effective August 26, 1977, however, states:

"This section *does not allow* a person to have access to any information compiled in reasonable anticipation of a civil or criminal action or proceeding." (Emphasis added.) The newspaper contends that it should have access to all records whether or not they contain information of an investigatory nature. The court reads R. C. 1347.08 as prohibiting access to public records dealing with law enforcement investigations. Inasmuch as that section prohibits the individual being investigated from obtaining access, we find that the General Assembly clearly intended that the general public also be precluded from access.[11] As

the board the power to promulgate rules, pursuant to R. C. Chapter 119, regulating the types of *uses* of personal information by agencies "where * * * the health, safety, or welfare of the public is involved, or for any other public purpose that the director or board determines to be consistent with the intent and purpose of Chapter 1347 of the Revised Code." To date, however, the Ohio Privacy Board has yet to promulgate any rules. This decision is not intended in any way to preempt the authority of the board.

[11]So construed, the Ohio statutes are similar to the Federal Freedom of Information Act, Section 552b(c)(7), Title 5, U. S. Code, which carves out an exemption from disclosure for "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of privacy, (D) disclose the identity of a confidential source, * * * (E) disclose in-

such, the release of such information is an exception to R. C. 149.43 in that its "release * * * is prohibited by state * * * law." It is important for the very operation of our government to allow it to keep certain material confidential, such as the investigatory files of law enforcement officers. The information contained in the exhibits pertaining to investigative reports which deal with information concerning the execution of the duties of the city relating to the prevention of crime, and the apprehension, prosecution and punishment of criminals is not subject to compulsory disclosure under R. C. 149.43.[13]

The decision of the Court of Appeals is, therefore, affirmed with respect to compulsory disclosure of the records discussed under Part II hereof, and reversed as to those records discussed in Part III.

*Judgment affirmed in part and reversed in part..*

HERBERT, CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

---

vestigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel."

[13]This is not to say that the Wooster Police Department may not reinstate its long-standing practice of meeting daily with the press in order to brief them about the events of the past day without going into details which would seriously hamper investigative efforts, breach confidential sources, or invade an individual's personal privacy.