The State, ex rel. Cincinnati Post, *v.* Marsh et al.

(No. 85-CV-0681 — Decided August 6, 1985.)

Court of Common Pleas of Clermont County.

*William R. Ellis,* for petitioner Cincinnati Post.

*Michael Minniear,* for respondent Sharon Marsh et al.

RINGLAND, J. This matter came for hearing on a writ of mandamus filed August 5, 1985. Both counsel for petitioner and respondents were present. While it appears that service had not been effectuated on the respondent Milford city clerk, nevertheless her counsel entered an appearance and made no objections to lack of service. After initial opening statements both counsel indicated they were ready to proceed in argument on the writ of mandamus.

The facts as indicated and agreed to by both counsel show that under the city of Milford Charter, the chief of police of Milford can be removed by the city manager with consent of the city council. Such an attempt to remove was made recently upon Chief Smith of the city of Milford by the city manager. However, the council meeting in executive session denied the city manager's efforts by majority vote. The council then voted, by a majority, to obtain an outside independent source to make a survey of community leaders, employees and citizens in and around Milford to determine the ability, efficiency, image, etc., of the present chief. The council then contracted with one Rogers and indicated to him that it requested confidentiality which he apparently represented to all interviewees. This contract for service was funded by $11,000 of taxpayers' money.

A survey was taken consisting of some oral but mainly written questionnaires. The questionnaires were filled out; some were signed and some were anonymous. Pursuant to the questionnaires and any oral interviews, Rogers prepared a report and made this report available to the city council. Petitioner seeks to have that report available for its inspection and possible copying per R.C. 149.40 and 149.43 so that it may relay results of the report to its readers, including but not limited to the citizens of Milford, Ohio. The respondents on the other hand claim that this is an invasion of privacy and would embarrass and harm the careers of several public officials including but not limited to the former police chief who was demoted as a result of this report. The petitioners make no request for review of either the signed or unsigned questionnaires, but merely the report prepared by Rogers based upon his interviews and questionnaires. Further the petitioners indicated that should there be any names of any private citizens involved in the report or the survey that said names would be excised.

The court recognizes that the rights of privacy must be balanced with the public's need to know, *Wooster*

*Republican Printing Co.* v. *Wooster* (1978), 56 Ohio St. 2d 126 [10 O.O.3d 312]. The issue agreed to by all counsel is whether or not the Rogers report is a public record required to be kept so that it must be made available to any member of the general public at all reasonable times for inspection under R.C. 149.40 and/or 149.43. R.C. 149.40, at the time relevant herein, stated:

"Any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state or its political subdivision which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office, is a record within the meaning of sections 149.31 to 149.44, inclusive, of the Revised Code.

"Any public record which is transferred to an archival institution pursuant to sections 149.31 to 149.44, inclusive, of the Revised Code because of the historical information contained therein shall be deemed to be an archive within the meaning of these sections."

R.C. 149.43 stated:

"(A)  As used in this section:

"(1) 'Public record' means any record that is required to be kept by any governmental unit, including, but not limited to, state, county, city, village, township, and school district units, except medical records, records pertaining to adoption, probation, and parole proceedings, trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law.

"(2)  'Confidential law enforcement investigatory record' means any record that pertains to law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

"(a)  The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

"(b)  Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose his identity;

"(c)  Specific confidential investigatory techniques or procedures or specific investigatory work product;

"(d)  Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

"* * *

"(B)  All public records shall be promptly prepared and made available to any member of the general public at all reasonable times for inspection. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time. In order to facilitate broader access to public records, governmental units shall maintain public records in such a manner that they can be made available for inspection in accordance with this division.

"(C)  Chapter 1347. of the Revised Code does not limit the provisions of this section."

Ohio Atty. Gen. Ops. No. 83-003 indicates that R.C. 149.40 and 149.43 are to be read together and therefore a public record is to be considered as any document received under the jurisdiction of any public office of the state or its political subdivision which serves to document the organization's decisions. This had further been enhanced by the Ohio Supreme Court in *Dayton Newspapers* v. *Dayton* (1976), 45 Ohio St. 2d 107 [74 O.O.2d 209]. That court held that documents are required to be kept when the unit's keeping of the

record is necessary to the execution of its duties and responsibility. The court admitted that the requirement "to be kept" element of R.C. 149.43 is ambiguous and did not imply that this was mandatory unless the legislature had indicated that it was required "by law" to be kept, which it did not. *Id.* at 108. The Milford Council, before it made its decision to support its city manager and the demotion of its police chief, required an investigative report. By legislative vote they had determined that this report was necessary in carrying out its duty and responsibility of passing upon the suitability of its police chief; that the *raison d'etre* of such record was to assure the proper functioning of the Milford Council. This criterion fits within the parameters and criteria of determining whether a public record is required to be kept. Further the court in *Dayton Newspapers, supra,* at 109 cited Supreme Court Judge Zimmerman in *State, ex rel. Patterson,* v. *Ayers* (1961), 171 Ohio St. 369, 371 [14 O.O.2d 116], as follows:

" 'The rule in Ohio is that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people * * *.' "

As indicated, the court must balance this right with the right of privacy as cogently discussed in *Wooster Republican Printing Co., supra,* at 134-135, and reiterated by Judge Grey in his decision in *State, ex rel. Athens News Inc.,* v. *Athens* (Oct. 30, 1981), Athens App. No. 1080, unreported, at 3:

"This court, therefore, must weigh the public's right to know, as codified in R.C. 149.43, against the individual's right of personal privacy, codified in R.C. Chapter 1349. We believe that in resolving these conflicting interests a balancing test between the individual's right of privacy and the preservation of the public's right to know must be applied. In so doing, the following factors are to be considered: (1) Whether disclosure would result in an invasion of privacy and, if so, how serious; (2) the extent or value of the public interest, purpose or object of the individuals seeking disclosure; and (3) whether the information is available from other sources.

"In weighing these factors, however, doubt as to whether disclosure is proper should be resolved in favor of disclosure of public records. *Dayton Newspapers, supra* (45 Ohio St. 2d 107, at 110 [74 O.O.2d 209]); *State, ex rel. Patterson,* v. *Ayers* (1960), 171 Ohio St. 369."

Applying these factors, the report-survey is not readily available from other sources. The privacy being invaded is the privacy of the activities of a public official which have been perceived as enhancing or diminishing his duties as a police chief. The city council by majority vote has deemed it necessary to create records to assist it in its decision to demote its police chief. Furthermore, in doing so and in creating these records, it has expended $11,000 of taxpayers' funds. That in and of itself gives the taxpayers of Milford an inherent right to see the product of their spent tax money.

This court recognizes that the city council passed on to Rogers its wish that such sources be kept confidential. The court recognizes that there are ways to take anonymous interviews without disclosing the names of the sources. However, that issue is not before this court inasmuch as the petitioner is not seeking the questionnaires from which the report is based and had indicated that if any private names come up that such names will be excised in any reporting of the incident. It is unfortunate that there may be several names of public officials including, but not limited to, the former police chief of Milford and that their names may again be discussed. This invasion of their privacy is a double-

edged sword: a full investigation by the press may eventually vindicate the chief. History has shown that only with and by the scrutiny of the press can the public be made aware of the wise or unwise actions or inaction of its public officials. Should there be improper conduct by the city manager, members of council and/or the police chief, then the public needs to know so that it may be informed whether or not the city council has made wise decisions concerning these matters. It is only through an informed citizenry that good government can continue to function. After a full review of the facts, Milford citizens can take the necessary steps to correct any perceived deficiencies.

It is with all of the above in mind, therefore, that the petitioner's writ of mandamus is hereby granted and the entry granting the writ of mandamus shall be filed forthwith, with the right of respondents to excise any names of citizens appearing in the survey.

*Writ granted.*