DOE ET AL., APPELLEES, *v.*
UNIVERSITY OF CINCINNATI, D.B.A.
PAUL I. HOXWORTH BLOOD CENTER,
ET AL., APPELLANTS.

(No. 88AP-553—Decided
December 22, 1988.)

*Rawlings & Associates, George R.
Rawlings, Henry V. Sanders* and
*Robert J. Stauble,* for appellees.

*Anthony J. Celebrezze, Jr.,* attorney general, and *William J.
McDonald,* for appellant University of
Cincinnati, d.b.a. Paul I. Hoxworth
Blood Center.

*Arnold & Porter, Bruce M. Chadwick, Fern P. O'Brien* and *Karen S.
Wagner,* for *amici curiae* American
National Red Cross, American Association of Blood Banks, and Council of
Community Blood Centers.

*Per Curiam.* Defendants appeal
from a discovery ruling granted on
plaintiffs' motion by the Court of
Claims. The discovery order from
which defendants appeal requires the
disclosure of the name, address and telephone number of the person who donated blood allegedly infected with Acquired Immune Deficiency Syndrome
("AIDS") which was subsequently
transfused into plaintiff Jane Doe.

In July 1984, plaintiff Jane Doe
was admitted to defendant University
of Cincinnati Hospital for surgery to
remove a malignant brain tumor. On
July 30, 1984, the scheduled surgery
took place during which plaintiff required the transfusion of blood. The
blood which plaintiff received was supplied by defendant Paul I. Hoxworth
Blood Center ("Hoxworth"), which
collects blood only on a voluntary-
donation basis.

At the time of plaintiff's blood
transfusion in July 1984, no test had
been developed to determine the existence of AIDS antibodies in blood. In
the absence of a test and upon recommendation of the American Association of Blood Banks, the Council of
Community Blood Centers and the
American Red Cross, blood centers instituted more extensive medical history evaluations and guidelines for
screening blood donors. Defendant

Hoxworth provided potential donors with a form requiring them to disclose their name, address, social security number and health background. In addition to the form which the potential donor was required to complete, an AIDS information brochure was distributed describing the symptoms exhibited by a person infected with the AIDS virus and setting forth certain high risk groups more likely to have contracted the virus.

After May 27, 1986, all donors were tested for the presence of Human Immunodeficiency Virus ("HIV") antibodies in their blood, which in turn often leads to AIDS. When donors having HIV antibodies in their blood were identified as repeat donors, defendant Hoxworth, through a "look-back program," tracked that donor's previously donated blood and determined where that blood was distributed. The donee's primary physician would then be contacted informing him that his patient had received a blood product from a donor who later tested positive for HIV antibodies. The donee would be notified and tested in order to determine if HIV antibodies were present in his blood.

In 1985, it was determined that a donor who tested positive for HIV antibodies had previously given blood at defendant Hoxworth in July 1984 and that plaintiff was the recipient of that blood. Plaintiff's primary physician was contacted and subsequent testing indicated that plaintiff had HIV antibodies in her blood. The plaintiff's physician informed plaintiff's parents who, due to plaintiff's age and mental disability, filed the present lawsuit.

In preparation for trial, plaintiffs initiated discovery in which one of the plaintiffs' requests was for defendants to identify the name, address and telephone number of the donor of the HIV-contaminated blood which plaintiff had received. Defendant objected to supplying any personal identification information of the donor, but did supply plaintiffs with a copy of the donor form with the personal identification of the donor deleted.

Plaintiffs thereafter filed a motion to compel defendants to provide the identification of the donor. On May 9, 1988, the trial court entered its order compelling defendants to supply plaintiffs with the name, address and telephone number of the donor. The trial court entry further ordered plaintiffs and their counsel not to divulge the donor's identity to anyone else, not to directly or indirectly contact the donor, and not to institute any action against the donor until permitted to do so by further order of the trial court. Finally, each party, if it so desired, was allowed to submit a plan to the trial court for future discovery of information relating to the donor.

Defendants now appeal the trial court's order and set forth four assignments of error for our review:

"I. The trial court erred in failing to find that the identity of the donor is protected by the statutory privilege of R.C. 2317.02.

"II. The trial court erred in failing to find that disclosure of the identity of the donor and any further discovery from the donor is barred by a constitutional right to privacy, and/or by the donor's otherwise legitimate expectations of privacy.

"III. The trial court erred in failing to find that the privacy interests of the donor, and the interests of the defendants and society in maintaining an adequate and effective volunteer blood supply, outweigh the interest of the plaintiff in identifying the donor or in engaging in further discovery from the donor.

"IV. The trial court erred in failing to find that disclosure of the identity of the donor is barred by R.C. Ch. 1347."

Before we may address those assignments of error which defendants have raised, we must first determine whether defendants' appeal is properly before this court. In *Humphry* v. *Riverside Methodist Hosp.* (1986), 22 Ohio St. 3d 94, 22 OBR 129, 488 N.E. 2d 877, the Supreme Court noted that in order for a party to be able to seek immediate review of a trial court's order, a two-prong test must first be met. The party seeking the immediate review must show first that a substantial right has been affected and second that the trial court's order was made during a special review.

To assist in the determination of whether a substantial right is affected, the court in *Humphry* stated:

"* * * In *Amato* v. *General Motors Corp.* (1981), 67 Ohio St. 2d 253 [21 O.O. 3d 158], we stated at 258 that the court must weigh 'the harm to the "prompt and orderly disposition of litigation," and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practicable.' " *Id.* at 96, 22 OBR at 131, 488 N.E. 2d at 878-879.

Clearly, under this standard the rights affected in the present case are substantial. Plaintiffs are already in possession of the nonparty blood donor's medical information and absent an immediate review of the trial court's order, the donor's rights of privacy and confidentiality as to medical diagnosis will be compromised, a wrong which cannot be cured by a subsequent review.

It is equally clear that the second prong of *Humphry* is met in the present case. As the *Humphry* court pointed out, while a discovery order may not ordinarily constitute a special proceeding, a discovery order is to be considered a final appealable order where the potential damage is incap-

able of later correction since a later determination is impracticable. As noted above, plaintiffs are currently aware of the donor's medical diagnosis. If disclosure of the donor's identity is allowed, a subsequent review of that decision would provide an inadequate remedy. Therefore, we find the trial court's order releasing the identity of the donor to be capable of review as a final appealable order.

In their first assignment of error, defendants argue that the trial court erred in failing to find that the identity of the donor is protected by the physician-patient privilege codified in R.C. 2317.02(B).

The May 4, 1988 entry of the referee was fully adopted by the trial court in its entry dated June 6, 1988. The referee specifically concluded that:

"* * * [T]he court is unaware of a statutory or common law privilege, including the physician-patient privilege, applicable to these facts."

We begin our review of the physician-patient privilege by setting forth R.C. 2317.02, which provides, in pertinent part:

"The following persons shall not testify in certain respects:

"* * *

"(B)(1) A physician concerning a communication made to him by his patient in that relation or his advice to his patient * * *."

Our analysis of the privilege must necessarily encompass the three essential elements of which the physician-patient relationship is composed: physician, patient and communication. R.C. 2317.02, being in derogation of the common law, must be strictly construed; consequently, only the relationship specifically named therein is protected. *Weis* v. *Weis* (1947), 147 Ohio St. 416, 428-429, 34 O.O. 350, 355, 72 N.E. 2d 245, 252.

With regard to the first element, defendants contend that although the

donor's blood is drawn by a person other than a physician, nevertheless, the procedure involves the physician-patient privilege. In *Weis, supra,* the Ohio Supreme Court refused to extend the privilege to communications made to a nurse in the performance of her duties unless the nurse is also a physician. The *Weis* court reasoned that if the privilege is to be extended to nurses who are not physicians, the change must be made by the General Assembly. Applying the holding from *Weis,* the Court of Appeals for Summit County similarly refused to extend the privilege to a medical technologist who had drawn a patient's blood upon the order of an attending physician. *State v. McKinnon* (1987), 38 Ohio App. 3d 28, 525 N.E. 2d 821.

As previously noted, the donor's blood was not drawn by a physician. Therefore, a necessary element of the physician-patient privilege is absent.

Furthermore, the facts in the present case seem to indicate that a blood donor is not considered a "patient," nor is the information provided by the blood donor a "communication" as defined in R.C. 2317.02(B)(3). The term "patient" is not defined by the Revised Code in the context of the physician-patient privilege. Black's Law Dictionary (5 Ed. 1979) 1014, defines "patient" as a "[p]erson under medical or psychiatric treatment and care." The term "treatment" is defined as "[a] broad term covering all the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." *Id.* at 1346.

According to the dissent in *Tarrant Cty. Hosp. Dist.* v. *Hughes* (Tex. App. 1987), 734 S.W. 2d 675, 681, the hospital bears the burden of proving the existence of the physician-patient privilege. The evidence presented does not indicate that the blood donor sought any treatment for himself by subjecting himself to the procedures involved in drawing his blood. Therefore, based on the evidence presented, the trial court could not have found the donor to be a patient.

R.C. 2317.02(B)(3) defines "communication" for purposes of division (B)(1) and (2) as follows:

"* * * '[C]ommunication' means acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician to diagnose, treat, prescribe, or act for a patient. * * *"

The hospital did not present any evidence which would indicate that the blood donor provided the information requested by the blood bank for any reason other than the benefit of the potential donee. The blood donor is not seeking any treatment for himself and his answers do not fall within the definition of "communication" for purposes of invoking the physician-patient privilege of R.C. 2317.02.

We agree with the reasoning expounded by the court in *Weis* that if the privilege is to be extended, the change must be made by the legislature. Therefore, the trial court did not abuse its discretion in refusing to apply the physician-patient privilege as the basis for keeping the name of the blood donor confidential.

Accordingly, defendants' first assignment of error is overruled.

As we find defendants' second and third assignments of error to be interrelated, we will consider them together. We begin our analysis by recognizing that "[m]odern discovery procedures are designed to make civil trials 'less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' *United States* v. *Procter & Gamble Co.* (1958), 356 U.S. 677, 682; *Hickman* v. *Taylor* (1947), 329 U.S. 495, 501." *Rossman* v.

*Rossman* (1975), 47 Ohio App. 2d 103, 107, 1 O.O. 3d 206, 208, 352 N.E. 2d 149, 152. However, the liberal discovery philosophy embodied in Ohio's Civil Rules is to be balanced with Civ. R. 26(C) which vests the trial court with the authority to limit pretrial discovery in order to prevent an abuse of the discovery process. Civ. R. 26(C) provides in pertinent part that "for good cause shown, the court * * * may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense * * *." Thus, the trial court must balance the competing interests to be served by allowing discovery to proceed against the harm which may result.

In balancing the competing interests implicated by disclosure of the blood donor's identity, we examine first the right to privacy asserted by defendants on behalf of the donor. Defendants argue that the information was barred both by a constitutional right to privacy and by the donor's legitimate expectation of privacy.

A constitutional right to privacy in the context of disclosure of personal information was first explicitly recognized in *Whalen* v. *Roe* (1977), 429 U.S. 589. In *Whalen,* the United States Supreme Court acknowledged that harm to a person's reputation may result from disclosing the person's name or address when the context of the release associates the person with certain characteristics or activities. Although the challenged release of information was not found to be unconstitutional in that case, the Supreme Court recognized that the right to privacy may involve "at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." (Footnotes omitted.) *Whalen, supra,* at

599-600. The first of those interests is at issue here.

Neither the United States nor the Ohio Constitution specifically mentions an inherent right to privacy. However, even absent an explicit textual foundation for privacy interests, Ohio courts, like the United States Supreme Court, have established that an inherent right exists. See, *e.g., Housh* v. *Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E. 2d 340; *General Motors Corp.* v. *Director of Natl. Institute for Occupational Safety & Health* (C.A. 6, 1980), 636 F. 2d 163; *Gutierrez* v. *Lynch* (C.A. 6, 1987), 826 F. 2d 1534, 1539.

Other courts which have discussed the right of privacy in a disclosure-of-information context have scrutinized in part the reputational harm that could result from the disclosure. Although relatively few published cases have explored the issue in an AIDS setting, at least one court determined that "[t]he potential of significant harm to * * * the * * * donors" in releasing their names and addresses pursuant to plaintiff's discovery request "is great and far outweighs the plaintiff's need under these circumstances." *Rasmussen* v. *South Florida Blood Service, Inc.* (Fla. 1987), 500 So. 2d 533.

In *Rasmussen,* decedent, while hospitalized after being struck by a vehicle, received fifty-one units of blood which had been supplied by South Florida Blood Service, Inc. ("South Florida"). Decedent later died of AIDS, and a wrongful death action was subsequently filed on his behalf against the driver and the owner of the vehicle. During discovery in the action, plaintiff subpoenaed from South Florida the names and addresses of the fifty-one donors whose donated blood had been transfused into decedent. The basis for plaintiff's discovery request was that without the information, he would be unable to prove that

decedent developed AIDS from the transfused blood. South Florida moved the trial court to either quash the subpoena or issue a protective order barring disclosure. Reversing the trial court's denial of the motion, the appellate court and the Florida Supreme Court agreed that the requested material should not be discovered.

The court in *Rasmussen* professed to analyze the decision strictly within the scope of Florida's discovery rules, thereby avoiding constitutional scrutiny. Nevertheless, the court's opinion included the donor's constitutional right to privacy as a factor to be weighed in balancing the interests favoring liberal discovery against the potential resulting harm. Citing *Whalen, supra,* and the privacy cases which preceded it in the Supreme Court, the Florida court determined that the plaintiff's interests in discovery were not more vital than those of the blood donors in remaining anonymous. The court found that previous cases "clearly establish that the federal right to privacy extends protection in some circumstances against disclosure of personal matters." *Id.* at 536. Recognizing that the disclosure of donor identities in the current context of AIDS could be extremely disruptive, even devastating to the donor's reputation, *Rasmussen* concluded that the disclosure sought implicated constitutionally protected privacy interests which outweighed plaintiff's interests.

Plaintiffs herein justify their request for disclosure of the information by arguing that only the donor has actual knowledge of whether defendants followed the proper screening procedures when accepting the donor's blood. Again, the determination requires a balancing of the competing interests, and we find the rationale in *Rasmussen* to be persuasive. While we do not deny that plaintiffs may indeed have a substantial interest in obtaining information from the donor concerning the procedures utilized by defendants in obtaining the donor's blood, such interest must be weighed against the potential injury to the donor. Clearly, in a suit such as this against the hospital and blood bank, plaintiffs' interest in learning the donor's name is modest. Moreover, defendants argue, and we agree, that no identifying information is legitimately needed to proceed with plaintiffs' case.

Plaintiffs assert, however, that the rationale of *Tarrant, supra,* is correct and should be applied. In *Tarrant,* decedent died from AIDS after receiving blood transfusions from defendant hospital. As part of the suit against defendant, plaintiff requested the production of documents pertaining to the names and addresses of blood donors. In overruling defendant's objection to the discovery and ordering the release of the donors' identities and addresses, the Texas Court of Appeals disagreed with the holding in *Rasmussen* and held that compelling defendant to identify blood donors was not an impermissible violation of their rights to privacy.

The divided *Tarrant* court, as did the trial court in this case, attached restrictions to the mandated disclosure of the donors' names, prohibiting plaintiff from contacting any identified donor or pursuing further discovery against such donor without leave of court, and further ordering that the identities of the donors not be disclosed. In the present case, the Court of Claims placed a further restriction on the disclosure by ordering that the information be kept in a secure place, available for destruction under the court's guidance. Additionally, the trial court created the opportunity for each party to submit a plan for future discovery of donor-related information. Thus, plaintiffs argue that given

the precautionary safeguards, any injury to the donor's privacy rights would be minimal.

While the trial court's order in this case would appear to contain adequate safeguards against the unchecked distribution of the requested information, we cannot agree that release of the information is warranted. In spite of the safeguards, the real harm lies in actual disclosure of the name. We can conceive of no reason for compelling such disclosure inasmuch as plaintiffs have not shown that they can obtain the information they seek only by learning the identity of the donor.

In addition to any constitutional right to privacy which the donor may have, the donor is also protected by the expectation of privacy which arose during the blood-donation screening process. A donor receives written assurances during the process that any information he or she furnishes will remain confidential. In analyzing the interests to be served, this expectation of privacy would weigh strongly in favor of denying discovery for there is little doubt but that confidentiality is an inherent consideration in blood donation. We thus hold that the harm which could result from disclosure of the requested information and the importance of protecting the donor's privacy interests, when balanced under Civ. R. 26(C), are paramount to plaintiffs' interests in pretrial discovery.

Defendants also assert that the interest society has in maintaining an adequate and effective volunteer blood supply is a factor which weighs in favor of denying discovery. Defendants argue that disclosure of donor information would inevitably result in a decrease in the number of voluntary blood donors. *Rasmussen, supra,* at 537-538, acknowledged the profound effect of AIDS in reducing the donor population and concluded that

society's interest in a strong and healthy blood supply would be hampered by granting the requested discovery. See, also, *Krygier* v. *Airweld, Inc.* (1987), 137 Misc. 2d 306, 520 N.Y. Supp. 2d 475. We, likewise, believe that a vital public interest will be furthered by denying discovery of the donor's name and address in this case.

We are, of course, cognizant of the emotional trauma which must necessarily be suffered by victims of AIDS and their families in cases such as this. At the same time, we must reiterate that the infected blood was donated prior to the time an effective test for the disease had been developed. Moreover, although charitable immunity does not shield the requested information from discovery, the charitable act that is involved when a person donates his or her blood must be recognized. Additionally, there is no indication in the present case that the infected donor gave blood knowing that he carried the HIV antibodies.

Finally, in applying the balancing test which is necessary under Civ. R. 26(C) this court recognizes that a trial judge has broad discretion in guiding discovery and absent an abuse of discretion, this court should not hasten to modify discovery orders. However, we find that, notwithstanding the restrictions which the trial court placed on disclosure, defendants have demonstrated that the trial court abused its discretion in ordering disclosure of the donor's name and address.

Accordingly, defendants' second and third assignments of error are sustained.

In their fourth assignment of error, defendants contend that the disclosure of the blood donor's identity is barred by Ohio's Privacy Act codified in R.C. Chapter 1347. Defendants assert that since they fall within the definition of "state agency" as set

forth in R.C. 1347.01, the Privacy Act prohibits the release of the donor's name, address and telephone number. We find the Ohio Supreme Court's discussion in *Henneman* v. *Toledo* (1988), 35 Ohio St. 3d 241, 520 N.E. 2d 207, to be instructive on this issue. In *Henneman,* the Supreme Court addressed the issue of whether information compiled by an internal affairs division of a police department was discoverable in civil litigation. The court stated:

"Appellants next argue that the information appellee requests is protected from disclosure by the provisions of R.C. Chapter 1347, and specifically R.C. 1347.08. Again, appellants have misapprehended the scope of the statute. 'A basic purpose of * * * [R.C. Chapter 1347] is to protect the individual's rights to privacy *with regard to public record keeping.* Amended Substitute Senate Bill No. 99 of the 111th General Assembly, codified as R.C. Chapter 1347, states in its preamble that its objective is to "regulate the use of personal information *by state and local governments* * * * and to protect the privacy of individuals *from excessive record keeping by government."* ' (Emphasis added.) *Wooster Republican Printing Co.* [(1978), 56 Ohio St. 2d 126], *supra,* at 133, 10 O.O. 3d at 316, 383 N.E. 2d at 128. *We do not believe that R.C. Chapter 1347 was intended to shield the personal information described therein from a legitimate discovery request when such information is otherwise discoverable."* (Emphasis added; footnote omitted.) *Id.* at 245, 520 N.E. 2d at 211.

Even assuming *arguendo* that defendants are a state agency subject to the nondisclosure requirements of Ohio's Privacy Act, we find defendants' argument to be untenable. As the *Henneman* court stated, and we agree, the purpose of R.C. Chapter 1347 is not to prevent discovery in civil litigation but to limit the public dissemination of personal information collected by a state agency. Moreover, where such information is otherwise discoverable, R.C. Chapter 1347 will not provide a blanket shield from a legitimate discovery request. In the present case, we find the limitations imposed by the Privacy Act to be inapplicable as the request for information was made within the confines of the discovery process. However, in our discussion of defendants' second and third assignments of error, we balanced the competing interests to be served by either allowing or denying disclosure of the donor's identity, and we determined that discovery should be denied. Thus, the requested information is not "otherwise discoverable" as contemplated by *Henneman.* Therefore, defendants' fourth assignment of error is not well-taken and is overruled.

Based on the foregoing, defendants' first and fourth assignments of error are not well-taken and are overruled. Defendants' second and third assignments of error are well-taken and are sustained. The judgment of the trial court is affirmed in part and reversed in part and the cause is remanded for further proceedings in accordance with law consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

STRAUSBAUGH, REILLY and MARTIN, JJ., concur.

JOHN D. MARTIN, J., of the Fairfield County Court of Common Pleas, sitting by assignment.