The STATE EX REL. BEACON JOURNAL PUBLISHING COMPANY

v.

RADEL, Clerk, et al.

[Cite as *State ex rel. Beacon Journal Publishing Co. v. Radel* (1993), 82 Ohio App.3d 193.]

Court of Appeals of Ohio,
Stark County.

No. CA–8192.

Decided Jan. 27, 1993.

Ronald S. Kopp and Amie L. Bruggeman, for relator.

Timothy G. Andrews and V. Lee Sinclair, for respondents.

GWIN, Presiding Judge.

On March 30, 1990, relator, the Beacon Journal Publishing Company, sought to inspect, pursuant to R.C. 149.43, all criminal records that Judge Virgil Musser of the Massillon Municipal Court sealed between the years of 1983 and 1989 to determine whether the records were sealed in conformity with R.C. Chapter 2953. Respondents, Edward Radel, Jr., Clerk of the Massillon Municipal Court, and Judge Richard T. Kettler, Presiding Judge of the Massillon Municipal Court, refused the inspection on the basis that the release of the records under circumstances where purported orders sealing same were entered by Judge Musser, whether properly entered under statute or not, would subject them to divulging confidential information, a misdemeanor of the fourth degree, under R.C. 2953.35(A).

Relator filed a complaint in mandamus on May 8, 1990, under R.C. 149.43, seeking an order from this court to compel respondents to furnish relator access and the right to inspect and copy the criminal records alleged to have been improperly sealed by Judge Musser during the aforementioned years. This court on May 14, 1990 issued a peremptory writ of mandamus ordering respondent Judge Kettler to "conduct an immediate *in camera* review of all court records necessary to determine whether Judge Virgil Musser sealed records in conformity with the provisions of R.C. 2953 at all times during Judge Musser's term of office."

Upon appeal of the peremptory writ of mandamus, the Ohio Supreme Court found the writ to be prematurely granted and that this court should conduct an *in camera* inspection of the records at issue.

Following the *in camera* inspection by this court and the within parties, it was determined that seventy-seven criminal cases between the years 1983 and 1989 may have been "sealed" without conforming to the dictates contained in R.C. 2953.52. Respondents, consistent with the Ohio Supreme Court's suggestion in *State ex rel. Beacon Journal Pub. Co. v. Radel* (1991), 57 Ohio St.3d 102, 104, 566 N.E.2d 661, 663, urged this court to determine whether due process required the persons who were named defendants in the seventy-seven criminal cases be notified and given opportunity to participate in further proceedings to determine the status of the "sealed" records.

It was relator's position that the defendants in the seventy-seven cases had no "property" and/or "liberty" interest whatsoever in the criminal records at issue which would invoke the procedural safeguards of the Fifth and Fourteenth Amendments to the United States Constitution.

We determined that Ohio's legislature, by enacting R.C. 2953.51 *et seq.,* recognized and sought to protect the privacy of an individual who was found not guilty of a criminal offense or who had criminal charges dismissed. It was relator, through this action, who sought an order from this court to remove or significantly alter that protected privacy interest. Those individuals who were named defendants in the seventy-seven criminal cases purportedly sealed by Judge Musser had a definite privacy interest affected if it was determined those records were improperly sealed. When Judge Musser purportedly sealed the criminal court records in question, those individuals who were named defendants believed under the color of state law that their records were permanently sealed. Accordingly, we ruled that any alteration of that privacy interest from the recognition and protection previously afforded by the state was sufficient to invoke the procedural safeguards contained in the due process clause of the Fourteenth Amendment.

Rather than notify all seventy-seven defendants, relator voluntarily limited the scope of this action to fifteen of the seventy-seven cases that may have been improperly sealed. Of those fifteen, relator successfully accomplished service upon twelve of the individuals by certified mail. However, only six of those twelve individuals chose to respond and/or offer evidentiary material in response to the notification.

Relator was unsuccessful in accomplishing service by certified mail upon the remaining three individuals. The notifications for two of the three individuals were returned "unclaimed" and were resent through ordinary mail to those individuals on October 8, 1992, with no subsequent response. It is presumed, although rebuttably, that those two individuals were therefore properly served pursuant to Civ.R. 4.6 where the ordinary mail envelope was

not returned indicating a failure to deliver. See *Grant v. Ivy* (1980), 69 Ohio App.2d 40, 42, 23 O.O.3d 34, 35, 429 N.E.2d 1188, 1190.

 The remaining notification sent by certified mail was returned as "unclaimed." Relator attempted to learn the forwarding address for the individual but was unsuccessful. All relator's efforts, short of publication, to notify the individual were met with defeat. While we previously held that the privacy interest of these individuals was sufficient to invoke the procedural due process guarantees, due process does not require actual notice. If the notification procedure is "reasonably calculated to achieve notice, successful achievement is not necessary to satisfy due process requirements." *Day v. J. Brendan Wynne, Inc.* (C.A.1, 1983), 702 F.2d 10, 11; *Stateside Mach. Co. v. Alperin* (C.A.3, 1979), 591 F.2d 234, 241. Fundamental due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873. In other words, due process required relator to exert diligent efforts to locate the remaining individual before any alteration of the recognized privacy interest occurred. *Kickapoo Tribe of Oklahoma v. Rader* (C.A.10, 1987), 822 F.2d 1493, 1499. We believe relator did exert diligent efforts to locate the remaining individual and that its attempts, although unsuccessful, were reasonably calculated to achieve same. We also believe that notification by publication would have compromised the very privacy interest sought to be protected. Accordingly, we conclude the remaining individual whose record may have been improperly sealed by Judge Musser is subject to this court's scrutiny without violating the procedural due process safeguards heretofore enunciated.

We now turn to the primary issue of whether the procedures contained in R.C. 2953.52 for the sealing of the aforementioned fifteen criminal cases were followed by Judge Virgil Musser.

██ Criminal proceedings are presumptively open to the public. *State ex rel. The Repository v. Unger* (1986), 28 Ohio St.3d 418, 420, 28 OBR 472, 474, 504 N.E.2d 37, 39. The foundations of freedom necessitate open court proceedings to ensure judicial integrity and public confidence in our system of justice. "The correction of judicial abuses and the approval of judicial wisdom and integrity depend alike upon the accessibility of the courts to public scrutiny." *State ex rel. Dayton Newspapers v. Phillips* (1976), 46 Ohio St.2d 457, 471, 75 O.O.2d 511, 518, 351 N.E.2d 127, 136. "Crime and corruption grow and thrive in darkness and secrecy. Justice thrives in the open sunlight of day. If we deny to the public and press access to courts of justice, we foster a system of jurisprudence heretofore unknown in the history of Ohio."

*E.W. Scripps Co. v. Fulton* (1955), 100 Ohio App. 157, 178, 60 O.O. 147, 158, 125 N.E.2d 896, 909.

One only need look at the current national scene to see the veneer of civilization is mighty thin and the secrecy of government eats it away with resulting violence. Eroding public confidence in the integrity of justice is harshly evidenced by the Los Angeles riots following the Rodney King beating verdict. The numerous questions as to the true cause of John F. Kennedy's death thirty years after the fact demonstrates the public view that corruption festers with governmental secrecy.

To help ensure public confidence and judicial integrity, Ohio enacted R.C. 149.43, the public records law. The purpose of this statute was discussed in *Dayton Newspapers v. Dayton* (1976), 45 Ohio St.2d 107, 109, 74 O.O.2d 209, 211, 341 N.E.2d 576, 577–578:

" 'The rule in Ohio is that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people; therefore, anyone may inspect such records at any time, subject only to the limitation that such inspection does not endanger the safety of the record, or unreasonably interfere with the discharge of the duties of the officer having custody of the same.' "

R.C. 149.43(B) provides that all "public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours."

R.C. 2953.52 provides an exception to the public records law by permitting a court to seal official court records in cases where a criminal defendant had been acquitted or charges had been dismissed. R.C. 2953.52 sets forth the procedures to be followed in the sealing of those official criminal files:

"(A)(1) Any person, who is found not guilty of an offense by a jury or a court or who is the defendant named in a dismissed complaint, indictment, or information, may apply to the court for an order to seal his official records in the case. Except as provided in section 2953.61 of the Revised Code, the application may be filed at any time after the finding of not guilty or the dismissal of the complaint, indictment, or information is entered upon the minutes of the court or the journal, whichever entry occurs first.

" * * *

"(B)(1) Upon the filing of an application pursuant to division (A) of this section, the court shall set a date for a hearing and shall notify the prosecutor in the case of the hearing on the application. The prosecutor may object to the granting of the application by filing an objection with the court prior to

the date set for the hearing. The prosecutor shall specify in the objection the reasons he believes justify a denial of the application.

"(2) The court shall do each of the following:

"(a) Determine whether the person was found not guilty in the case, or the complaint, indictment, or information in the case was dismissed, or a no bill was returned in the case and a period of two years or a longer period as required by section 2953.61 of the Revised Code has expired from the date of the report to the court of that no bill by the foreman or deputy foreman of the grand jury;

"(b) Determine whether criminal proceedings are pending against the person;

"(c) If the prosecutor has filed an objection in accordance with division (B)(1) of this section, consider the reasons against granting the application specified by the prosecutor in the objection;

"(d) Weigh the interests of the person in having the official records pertaining to the case sealed against the legitimate needs, if any, of the government to maintain those records.

"(3) If the court determines, after complying with division (B)(2) of this section, that the person was found not guilty in the case, that the complaint, indictment, or information in the case was dismissed, or that a no bill was returned in the case and that the appropriate period of time has expired from the date of the report to the court of the no bill by the foreman or deputy foreman of the grand jury; that no criminal proceedings are pending against the person; and the interests of the person in having the records pertaining to the case sealed are not outweighed by any legitimate governmental needs to maintain such records, the court shall issue an order directing that all official records pertaining to the case be sealed and that, except as provided in section 2953.53 of the Revised Code, the proceedings in the case be deemed not to have occurred."

 Pursuant to R.C. 2953.52, a defendant may apply for an order to seal his official criminal records any time *after* a finding of not guilty or the dismissal of the criminal complaint. Once the application is *filed*, the trial court is required to set a hearing date on the application and notify the prosecutor of same. As it is well settled that a court speaks only through its journal, the court in considering whether to grant the application to seal criminal records is required at the hearing to (1) determine whether the applicant was found not guilty or the criminal offense was dismissed; (2) determine whether criminal proceedings are pending against the applicant; (3) consider the prosecutor's objections, if any; (4) weigh the applicant's interest

in having the official criminal records sealed against the legitimate interest of the government to maintain public records. The statute then specifically provides that the records may be sealed if the court complies with the above-mentioned procedures.

R.C. 2953.52 is clear as to the proper procedures to be followed in transferring an official public criminal record into a privately sealed record which cannot be accessed by the public. It was the state legislature which chose these procedures and placed as a condition precedent to an order sealing criminal records that the trial court comply with the procedures.

■ A review of the fifteen cases at issue demonstrates that Judge Virgil Musser did not comply with the procedures outlined in R.C. 2953.52. Applications to have the official records sealed were not filed after a finding of not guilty or dismissal of the criminal charges. In fact, no application was filed in any of the cases. No separate hearing on the issue of sealing was had on any of the cases and no evidence contained in those records indicate the prosecutor was informed of the possibility that the records would be sealed.

Instead, of the affidavits and arguments submitted by four of the individuals who responded to the notifications made by relator, it is clear that Judge Musser generally offered the sealing of the official records as early as pretrial and usually granted a sealing order simultaneously with and in the same entry as the dismissal order. There is no question that Judge Virgil Musser of the Massillon Municipal Court failed to comply with the statutory procedures for sealing criminal records and the evidence submitted on behalf of the individuals whose records in question were sealed by Judge Musser does not alter this conclusion.

Therefore, because Judge Virgil Musser failed to comply with the statutory requirements set forth in R.C. 2953.52 in sealing the fifteen criminal records at issue (case Nos. 88CRB1458, 88CRB2076, 87CRB523, 89CRB1696, 86CRB1729, 84CRA347, 89CRB591, 87CRB1346, 88CRB690, 89CRB856, 87CRB587, 86CRB1208, 89CRB2323, 87CRB2139 and 85CRB1822), we have no choice but to find those criminal records never lost their public status and are hereby open to the public.

*Writ granted.*

SMART, J. concurs.

HOFFMAN, J. concurs in part and dissents in part.

WILLIAM B. HOFFMAN, Judge, concurring in part and dissenting in part.

I fully concur in the rationale and ultimate decision with respect to all but one of the fifteen individual cases subject to our scrutiny in the case *sub*

*judice.* Prior to expressing my dissent from the decision as to case No. 87CRB523, I wish to commend Judge Gwin for his efforts in the management, scheduling and directing the numerous hearings and conferences required by this case and compliment him for his well-reasoned majority opinion.

I nonetheless dissent with respect to the decision as it relates to case No. 87CRB523. I believe that having properly concluded that the individual defendants whose records were sealed by court order acquired a protected property/privacy right therein, due process requires that they be served notice in accordance with Civ.R. 4 prior to any ruling respecting the efficacy of the sealing order.

The return endorsement in case No. 87CRB523 demonstrates failure of delivery by certified mail. This failure of delivery is insufficient to complete service under Civ.R. 4.6(D). Due diligence on the part of the relator to locate this defendant, though sufficient to justify service by publication under Civ.R. 4.4, does not bear in the analysis of sufficiency of service by certified mail pursuant to Civ.R. 4.6(D).

I would delete case No. 87CRB523 from our judgment entry.